**SCULLIN STEEL COMPANY, Appellant,**

v.

**NATIONAL RAILWAY UTILIZATION CORP., Appellee.**

**No. 81–1909.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 9, 1982.

Decided April 27, 1982.

As Revised April 29, 1982.

Jim J. Shoemake, John W. O'Neil, Jr., Michael B. Minton, Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for Scullin Steel Co.

Thomas C. Walsh, William E. McCurdy, Jr., St. Louis, Mo., for appellee; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Scullin Steel Co. appeals from a final order entered in the District Court [1] for the Eastern District of Missouri dismissing its

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of

Missouri.

complaint against National Railway Utilization Corp. (NRUC) for lack of personal jurisdiction. For the reasons discussed below, we affirm the judgment of the district court.

The following facts are based upon the memorandum opinion of the district court, *Scullin Steel Co. v. National Railway Utilization Corp.*, 520 F.Supp. 383 (E.D.Mo.1981). Scullin Steel is a Delaware corporation with its principal place of business in St. Louis, Missouri. NRUC is a South Carolina corporation with its principal place of business in Philadelphia, Pennsylvania. Scullin Steel manufactures steel castings used in the manufacture of railroad cars. NRUC manufactures and leases railroad cars. NRUC is not authorized to do business in Missouri, has no office or personnel in Missouri, owns no real property in Missouri, and has no agent for service of process or for any other purpose in Missouri.

In June 1978 an officer of Scullin Steel went to Philadelphia to negotiate a contract for the sale of railroad "car sets" (side frames and bolsters) to NRUC. The negotiations were successful. Scullin Steel prepared the original sales agreement and an amended sales agreement which superseded the original. NRUC executed the agreements in Philadelphia, Scullin Steel in St. Louis. Under the terms of the amended sales agreement, Scullin Steel was to sell NRUC 2,700 car sets from January 1, 1979 through December 31, 1981, at the rate of 75 car sets per month, "F.O.B. Seller's Plant, St. Louis, Missouri." In early 1979 the sales agreement was further amended, apparently on the initiative of Scullin Steel. As amended, the sales agreement was extended for two years and provided for the sale of an additional 3,662 car sets. No NRUC employee visited Missouri in connection with the negotiation, amendment or extension of the sales agreement or the supervision of Scullin Steel's performance.

Scullin Steel's only plant is and has been located in St. Louis, Missouri; therefore, all the manufacturing was performed in Missouri. All payments by NRUC were sent to Scullin Steel in St. Louis; all shipments were made from St. Louis.

NRUC had specified certain details for the castings for the car sets. Scullin Steel's engineering department prepared drawings incorporating NRUC's specifications. NRUC approved the drawings and submitted an initial order for 2,160 car sets. The car sets manufactured by Scullin Steel for NRUC were interchangeable with respect to any railway cars having a 70-ton load capacity (which includes 70% of all rolling stock in the United States). Although not specified by NRUC, Scullin Steel decided to manufacture the car sets' parts with holes for dead-lever fulcrum brackets. (Evidently Scullin Steel thought that such a modification would enhance the usefulness of the car sets.) Of the 6,362 car sets referred to in the amended sales agreement, 87 car sets were received and accepted by NRUC. The invoice price of the 87 car sets was $109,642.53, which NRUC refused to pay. NRUC also returned parts to Scullin Steel which, less scrap value, were invoiced at $294,489.22. Scullin Steel had also manufactured other parts pursuant to the sales agreement which had an invoice price of $71,438.20. NRUC did not place any additional orders.

Scullin Steel participated in a series of meetings in early 1980 with NRUC during which the parties discussed Scullin Steel's claims. NRUC was in great financial difficulties at this time and in June 1980 submitted a plan of reorganization. This evidently did not resolve the controversy and in late June 1980 Scullin Steel filed this complaint in federal district court, alleging breach of contract and wrongful refusal to settle and claiming actual damages, lost profits and punitive damages. The basis for subject matter jurisdiction was diversity of citizenship, 28 U.S.C. § 1332. Service of process was made on NRUC in Philadelphia pursuant to the Missouri long-arm statute, Mo.Rev.Stat. § 506.500 (1978).[2] NRUC

2. Mo.Rev.Stat. § 506.500 provides in part:

1. Any person or firm, whether or not a citizen or resident of this state, or any corpo-

filed a motion to quash service of process and to dismiss for lack of personal jurisdiction and failure to state a claim (on Count III, the claim for wrongful refusal to settle). The district court granted the motion to dismiss, finding that Scullin Steel failed to make a prima facie showing of jurisdictional facts. This appeal followed.

For reversal Scullin Steel argues that the reach of Missouri's long-arm statute is coextensive with that of due process and that NRUC's contacts with Missouri satisfy the state statutory requirement of "transacting business" and the due process requirement of "minimum contacts." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). NRUC argues that it has not transacted any business in Missouri in connection with Scullin Steel's cause of action and that its contacts with Missouri do not satisfy the due process requirement of minimum contacts.

While the facts adduced in a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction. "Once jurisdiction has been controverted or denied, [the plaintiff has] the burden of proving such facts."

*Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977), *citing Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256, 259 (8th Cir. 1974). "It is by now well-settled that the party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists, and the burden may not be shifted to the party challenging the jurisdiction." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490 (5th Cir. 1974), *citing Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir. 1973).

■ "By virtue of Fed.R.Civ.P. 4(d)(7) & (e), a federal court in a diversity action enjoys jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state." *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1264 n.2 (5th Cir. 1981); *see* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075 (1969). Although the reach of the state long-arm statute is a question of state law and federal courts are required to accept the interpretation given the statute by the state supreme court, the extent to which the reach of the long-arm statute is limited by due process is a question of federal law. *E.g., Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 599 (7th Cir. 1979) (*Lakeside*), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). The Missouri Supreme Court has stated that the legislative objective of the long-arm statute was "to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo.1970) (banc); *see also M & D Enterprises, Inc. v. Fournie*, 600 S.W.2d 64, 68 (Mo.Ct.App. 1980). As explained in *State ex rel. Caine v. Richardson*, 600 S.W.2d 82, 85 (Mo.Ct. App.1980), "[s]uch a statement, of course,

---

ration, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;

(2) The making of any contract within this state;
. . . .
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

means the 'extent permissible' for the act or conduct set forth in the statute, and does not refer to the limits which might be permissible for other conduct not specified in the statute."

■ Our inquiry is a two-part one: first, whether the facts presented satisfy the statutory requirements, Mo.Rev.Stat. § 506.500, subd. 1, and, second, whether the exercise of personal jurisdiction is consistent with due process. *E.g., Hutson v. Fehr Bros.*, 584 F.2d 833, 835 (8th Cir.) (banc), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1978); *Dangerfield v. Bachman Foods, Inc.*, 515 F.Supp. 1383, 1386 (D.N.D.1981); *State ex rel. Caine v. Richardson*, 600 S.W.2d at 85 (two-part inquiry); *M & D Enterprises, Inc. v. Fournie*, 600 S.W.2d at 68 (two-part inquiry).

The Missouri courts have liberally construed the statutory requirement of "transacting any business" within the state for purposes of long-arm jurisdiction. *E.g., Wooldridge v. Beech Aircraft Corp.*, 479 F.Supp. 1041, 1053 (W.D.Mo.1979); *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 331 F.Supp. 1215, 1218 (W.D.Mo. 1971) ("transacting any business" concept significantly broader than "doing business" concept), *aff'd*, 462 F.2d 998 (8th Cir. 1972), *citing Scheidegger v. Greene*, 451 S.W.2d 135, 138 (Mo.1970); *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241, 243 (W.D.Mo.1970); *State ex rel. Farmland Industries, Inc. v. Elliott*, 560 S.W.2d 60, 62–63 (Mo.Ct.App.1977). However, these cases have required some activity, directly or indirectly related to the transaction in question, on the part of the nonresident defendant in Missouri. *E.g., American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. at 243 (business conference between the representatives of the parties in Kansas City, Missouri, was transaction of business within Missouri which was preliminary to execution of contract out of which lawsuit arose); *State ex rel. Farmland Industries, Inc. v. Elliott*, 560 S.W.2d at 62–63 (conferences in Kansas City, Missouri, between representatives of parties constituted transaction of any business). As required by the long-arm statute, Mo.Rev.Stat. § 506.500, subd. 2, the cases have also required that the nonresident defendant's activities within the state give rise to the cause of action asserted in the litigation. *E.g., Wooldridge v. Beech Aircraft Corp.*, 479 F.Supp. at 1054–56, *citing State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31, 35 (Mo.1976) (banc).

■ We have found no Missouri case squarely on point. "A federal court can do no more than attempt to predict what the state appellate courts would decide if they [were] presented with the same facts." *Interstate Paper Corp. v. Air-O-Flex Equipment Co.*, 426 F.Supp. 1323, 1327 (S.D.Ga. 1977). We do not think the activities of NRUC satisfy the statutory requirement of "transacting any business" within Missouri. All of the negotiations, before and after the execution of the sales agreement, were conducted in Pennsylvania, not in Missouri. None of the NRUC personnel ever visited Missouri in connection with the sales agreement or the specifications. As noted earlier, NRUC is not authorized to do business in Missouri, has no office or personnel in Missouri, owns no real property in Missouri, and does not have any agent for service of process or for any other purpose in Missouri.[3] There was no showing that NRUC had any other contacts with the state of Missouri. Scullin Steel had partially performed under the contract in St. Louis and NRUC sent its payments to St. Louis; the parties also used the mail and exchanged telephone calls. However, we do not think that these factors alone are sufficient to constitute the "transaction of any business" within the meaning of the long-arm statute. *See J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 331 F.Supp. at 1218 (telephone

---

3. "[I]f a corporation is in fact conducting business within a state it may be subject to personal jurisdiction in litigation not arising from the business transacted and the exercise of such jurisdiction does not violate the due process clause." *State ex rel. Caine v. Richardson*, 600 S.W.2d 82, 84 (Mo.Ct.App.1980), *citing Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

conferences and partial performance within the state as factors in addition to conferences); *State ex rel. Farmland Industries, Inc. v. Elliott*, 560 S.W.2d at 63 (partial performance and payments in Missouri supplement finding of transaction of business based upon conferences within the state); *cf. M & D Enterprises, Inc. v. Fournie*, 600 S.W.2d at 68 (telephone calls, making payments and bookkeeping activities within forum state insufficient for due process); *Shady Valley Park & Pool, Inc. v. Dimmic*, 576 S.W.2d 579, 580 (Mo.Ct.App.1979) (no transaction of any business within forum state where contract was made by interstate telephone call; contract performance by resident plaintiff within forum state).

■ Alternatively, we do not think that there are sufficient "minimum contacts" between NRUC and the state of Missouri so that the assertion of personal jurisdiction over NRUC would be consistent with traditional notions of fair play and substantial justice.[4] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292, 100 S.Ct. at 564; *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158. To support the exercise of personal jurisdiction over NRUC, Scullin Steel cites its manufacture of the castings within Missouri, delivery "F.O.B. St. Louis," and payment within Missouri. Scullin Steel argues that the sales agreement necessarily had a significant impact upon the commerce of the forum state. Scullin Steel in essence relies upon its performance under the contract

within the forum to supply the requisite minimum contacts.[5] *See Lakeside*, 597 F.2d at 603; *Premier Corp. v. Newsom*, 620 F.2d 219, 222–23 (10th Cir. 1980); *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288 (5th Cir. 1978) (per curiam). The critical relationship is that "among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977). "Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d at 1303, *citing Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1211 (8th Cir. 1977).

This court upheld the exercise of personal jurisdiction over a nonresident defendant on the basis of unilateral performance by the resident plaintiff in the forum state in *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365, 368 (8th Cir. 1969) (Minnesota law). However, we do not

---

**4.** This Court has considered the following factors in deciding whether or not a nonresident's contacts with the forum state were sufficient to impose jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
*Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977); *See Aftanese v. Economy Baler Co.*, 343 F.2d 187 (8th Cir. 1965). The last two factors are of secondary importance and not determinative. *See Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1210 n.5 (8th Cir. 1977).

**5.** We express no opinion as to whether a contract requiring performance within the forum state would support the exercise of personal jurisdiction over a nonresident defendant. Scullin Steel was not required by the sales agreement to manufacture the car sets and parts in St. Louis. As found by the district court, 520 F.Supp. at 386, NRUC fully anticipated performance by Scullin Steel in St. Louis. However, " 'foreseeability' [of an impact within the forum state] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980) (products-liability action).

**314**

think *Electro-Craft* helps Scullin Steel. In *Electro-Craft* the court applied a distinction between nonresident sellers and nonresident buyers recognized in Minnesota law. *Id.* A later case, *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d at 1214–15, did not wholly endorse this distinction and stated that "the ultimate test is whether the [nonresident] defendant, *either as seller or buyer*, has performed 'some act by which [it has] purposefully [availed] itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws.'" *Id.* at 1215 (emphasis added), *citing Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239. Even assuming its continued vitality, the distinction between nonresident sellers and buyers would not help Scullin Steel because NRUC, unlike the defendant in *Electro-Craft*, is a nonresident *buyer*. As explained in *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d at 1214, *Electro-Craft* recognized that "solicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a [nonresident] seller soliciting the right to ship goods into the forum state." *Electro-Craft* considered the sufficiency of the contact of a nonresident *seller* with the forum state. *Cf. M & D Enterprises, Inc. v. Fournie*, 600 S.W.2d at 69 (holding that nonresident buyer could not be sued in Missouri where the nonresident purchaser's only contacts with Missouri were telephone calls and payments; plaintiff seller was a Missouri corporation with management offices in Missouri and production facilities in Kansas).

The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process. *See Lakeside*, 597 F.2d at 603–04 & n.14 (questioning significance for personal jurisdiction purposes of shipping term "F.O.B. forum state"); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d at 453 (use of facilities of interstate commerce); *McQuay, Inc. v. Samuel Schlos-*

*berg, Inc.*, 321 F.Supp. 902, 905–06 (D.Minn. 1971) (payment within forum).

In conclusion we agree with the district court that Scullin Steel did not make a prima facie showing of jurisdictional facts. Accordingly, the judgment of the district court is affirmed.