**FINGERHUT GALLERY, INC., a Minnesota Corporation (formerly Allan F. Gallery, Inc.), Plaintiff,**

v.

**Robert STEIN, John Doe, and Mary Roe, et al., Defendants.**

**No. CIVIL 4–82–656.**

United States District Court, D. Minnesota, Fourth Division.

Oct. 6, 1982.

---

J. I. Moreland, Jr. and Bruce C. Douglas, Edina, Minn., for plaintiff.

Charles D. Reite and John R. Dorgan, Frommelt, Eide & Reite, Minneapolis, Minn., for defendant Robert Stein.

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant Robert Stein's motion to dismiss for lack of personal jurisdiction or to quash the return of service. Alternatively, the defendant moves to transfer venue. For the reasons stated below, the Court will grant the defendant's request for a change of venue.

## FACTS

This action arises out of the sale of a Marc Chagall lithograph entitled "Paris From My Window." In early June 1981, defendant Robert Stein (Stein), a resident of Chicago, Illinois, telephoned Allan Fingerhut (Fingerhut) of Fingerhut Gallery, Inc. (Gallery), a Minnesota corporation, to inquire whether Fingerhut had a certain Chagall lithograph for which Stein had a buyer. In the same telephone conversation, Fingerhut stated he did not have the requested lithograph but he had a Chagall lithograph entitled "Paris From My Window."[1] Stein said he preferred that lithograph to his original choice. Stein requested that Fingerhut send the lithograph to his residence in Chicago for inspection by him and his client. Responding to this request, Fingerhut directed plaintiff Gallery's manager to send the lithograph by overnight Federal Express delivery and to include an invoice for the mutually agreed purchase price of $16,250.

After receiving the lithograph, Stein paid the plaintiff $5,000 but has refused to pay the remaining $11,250. The plaintiff filed this diversity suit on April 26, 1982, alleging breach of contract, interference with plaintiff's contract rights with the lithograph's prior owner, misrepresentation, and conversion. The plaintiff seeks the balance of the sale price and special and general damages. Alternatively, the plaintiff seeks the return of the lithograph or its current reasonable value as well as costs.

The parties dispute the facts surrounding the service of the complaint. A private process server, Walter M. McWilliams (McWilliams), states in an affidavit that he handed a copy of the complaint to a woman he believed to be Stein's wife who answered the door at Stein's residence. McWilliams also states that after taking possession of the documents, she examined them and threw them to the floor of the hallway in front of Stein's apartment and shut the door. McWilliams claims he picked up the documents and inserted them between the doorknob and doorjamb. McWilliams provides a detailed description of this woman.

Elissa Stein, Stein's wife, contradicts McWilliams' version of how service of process was attempted. She states in her affidavit that McWilliams falsely identified himself to gain admittance to her apartment building. When McWilliams knocked at her apartment door, she claims to have opened the door partially and upon seeing that McWilliams was not who he said he was she shut the door and locked it. She denies ever being handed the summons and asserts she first saw it later on the hallway floor in front of her and Stein's door.

Defendant Stein's motions challenge the Court's exercise of personal jurisdiction over him and the validity of the service of process.

## DISCUSSION

When a defendant challenges a court's assertion of personal jurisdiction over a defendant, the plaintiff bears the burden of proving the existence of sufficient minimum contacts to satisfy the requirements of due process. *Hardrives, Inc. v. City of LaCrosse, Wisconsin,* 307 Minn. 290, 240 N.W.2d 814, 816 (1976). The plaintiff, however, need only make a prima facie

---

1. The defendant disputes this sequence of events. Stein claims that Fingerhut stated he did not have the desired lithograph and the conversation ended. Stein claims Fingerhut called him a week later to inform him that he had the lithograph at issue in the present case. On the basis of this second call, Stein claims that Fingerhut initiated the sales transaction.

The Court accepts the plaintiff's version for the purposes of this motion. The plaintiff needs to make only a prima facie showing of Minnesota contacts through the complaint and supporting evidence, which must be taken as true. *Hardrives, Inc. v. City of LaCrosse, Wisconsin,* 307 Minn. 290, 240 N.W.2d 814, 816 (1976).

showing of minimum contacts through facts stated in the complaint and affidavits, which are taken as true for purposes of deciding the motion. *Id. Accord Norval Industries, Inc. v. Superior Companies, Inc.,* 515 F.Supp. 895 (D.Minn.1981).

In Minnesota jurisdiction over nonresident individuals is governed by Minn.Stat. § 543.19, which provides in part as follows:

Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over ... any non-resident individual ... in the same manner as if ... he were a resident of this state. This section applies if, in person or through an agent, the ... nonresident individual:

.        .        .        .        .

(b) Transacts any business within the state, or

.        .        .        .        .

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or

(3) the cause of action lies in defamation or privacy.

The Minnesota Supreme Court has often stated that Minnesota's long-arm statutes extend a court's jurisdiction to the maximum limits consistent with due process and that the long-arm statutes should be interpreted broadly to afford maximum protection to Minnesota residents. *See, e.g., B & J Manufacturing Co. v. Solar Industries, Inc.,* 483 F.2d 594, 596 (8th Cir. 1973), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974).

To satisfy the due process requirements, the plaintiff must demonstrate that the defendant's contacts with the state satisfy the minimum contacts test first articulated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A critical consideration is whether the defendant performed "some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

The United States Court of Appeals for the Eighth Circuit in *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965), articulated five factors a court should consider in determining whether due process requirements are satisfied. The primary factors in *Aftanase* are 1) the quantity of the defendant's contacts, 2) the nature and quality of the contacts, and 3) the relationship between the cause of action and the contacts. The two secondary factors are 1) the state's interest in providing a forum, and 2) the convenience of the parties.

The plaintiff argues that the defendant transacted business within the state by placing a telephone call into Minnesota and buying a lithograph. The plaintiff emphasizes the fact that the defendant initiated the business transaction and thus "purposely availed" himself of the privilege of conducting business within the state. Even if the Court accepts the plaintiff's version of the facts, these facts do not support the exercise of jurisdiction over Stein.

Two recent cases clearly indicate the threshold requirements for asserting jurisdiction. In *Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309 (8th Cir. 1982) the Eighth Circuit upheld the trial court's dismissal of the plaintiff's complaint for lack of personal jurisdiction. The defendant, whose principal place of business was in Pennsylvania, ordered over 6,000 railroad car parts from the plaintiff, whose principal place of business and manufacturing plant were located in St. Louis, Missouri. The agreement was to extend over four years. The defendant executed the agreement in Pennsylvania, and the plaintiff exe-

cuted it in Missouri. None of the defendant's employees ever visited Missouri. All the manufacturing was performed in Missouri; all shipments were made from Missouri. The defendant actively participated in the design of the parts and approved the design plans. Because of financial difficulties the defendant was unable to pay for the parts. The plaintiff sued in federal court in Missouri for breach of contract. The trial court dismissed the complaint finding the plaintiff had failed to make a prima facie showing of jurisdiction under Missouri's long-arm statute, which resembles Minnesota's and which extends to the limits of due process. *Scullin Steel,* 676 F.2d at 311.

Although the Eighth Circuit noted that the Missouri courts, like the Minnesota courts, have liberally construed the statutory requirement of "transacting business" within the state for long-arm purposes, it held that a plaintiff must show "some activity, directly or indirectly related to the transaction in question, on the part of the defendant." *Id.* at 312. In upholding the defendant's dismissal, the Eighth Circuit noted the following significant factors:

1) All of the negotiations, before and after the execution of the sales agreement, were conducted in Pennsylvania;

2) None of the defendant's employees ever visited Missouri in connection with the sales agreement or design of the parts;

3) Defendant had no office, personnel, real property, nor any agents in Missouri. The court noted the parties had used the mails and telephone numerous times, but the court stated, "we do not think that these factors alone are sufficient to constitute the 'transaction of any business' within the meaning of the long-arm statute." *Id.* at 312.

The Eighth Circuit also held that the defendant lacked sufficient minimum contacts to satisfy due process requirements. The court noted that merely entering into a contract with a forum resident does not provide the requisite forum contacts. *Id.* at 313. In addition, the court noted that a nonresident buyer who solicits an offer from a seller for delivery outside the forum state has "more minimal contact than that of a [nonresident] seller soliciting the right to ship goods into the forum state." *Id.* at 314, *quoting Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211, 1214 (8th Cir. 1977). The present case involves this "more minimal contact" since the plaintiff asserts that the defendant called him seeking to purchase the lithograph. However, commenting on mere telephone and mail contacts with the forum, the Eighth Circuit said, "The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are *secondary or ancillary factors* and cannot alone provide the 'minimum contacts' required by due process." *Scullin Steel,* 676 F.2d at 314 (emphasis added).

Applying *Scullin Steel* to the present case, the Court finds that the plaintiff has failed to establish anything more than the secondary or ancillary factors the Eighth Circuit has stated cannot by themselves support jurisdiction. The only contact with Minnesota is the defendant's single telephone call to Fingerhut and his single payment sent to Minnesota. Such isolated activities do not satisfy due process requirements.

In *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651 (8th Cir. 1982), the Eighth Circuit upheld the trial court's dismissal of the plaintiff's complaint for lack of personal jurisdiction. As in *Scullin Steel,* the defendant in *Mountaire* purchased products from the plaintiff, a resident of the forum state. The defendant initiated that transaction by calling the plaintiff first for price information and then later ordering products by telephone and confirming the order by letter. The defendant had also sent letters to the plaintiff earlier specifying the quality and composition of the products. No employee of the defendant ever visited the forum state. The defendant provided special shipping tags and letters of credit, which were mailed into the forum state. Payments were made in the forum

state. All contacts between the parties were by telephone or mail. After a dispute regarding the quality of the products and the defendant's refusal to pay, the plaintiff sued to recover the contract price.

In upholding the trial court's dismissal the Eighth Circuit noted there was no question that the defendant was transacting business within the forum state, but held that there were insufficient minimum contacts with the forum. The court held that the unilateral performance by the plaintiff in the forum was insufficient to support jurisdiction. As in *Scullin Steel,* the court stated that "the use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." *Mountaire,* 677 F.2d at 656, quoting *Aaron Ferer & Sons v. Atlas Scrap Iron & Metal Co.,* 558 F.2d 450, 453 (8th Cir. 1977). The court stated that the plaintiff had merely linked the defendant to itself but not to the forum since the plaintiff failed to show that the defendant had "purposely availed" itself of the forum's protections.

As in *Mountaire,* the defendant in the present case 'initiated the transaction by telephoning the plaintiff in the forum state. Similarly, all contacts were by telephone or mail. Thus, the Court finds there are insufficient contacts to justify the exercise of jurisdiction over Stein.

The plaintiff relies heavily on *Marquette National Bank of Minneapolis v. Norris,* 270 N.W.2d 290 (Minn.1978) in which the Minnesota Supreme Court upheld personal jurisdiction over a nonresident whose only contacts with Minnesota were by mail and telephone. The defendants, Illinois residents, had participated in a single isolated loan renewal transaction in which their collateral was substituted for that of some Minnesota residents. The court was heavily influenced by the fact that the cause of action arose directly out of the defendants' contacts with the state.

The Court finds that *Marquette* is not dispositive. *Marquette* involved a complex stock sale and loan transaction between sophisticated nonresident stock brokers and Minnesota residents. *Marquette* also involved approximately $90,000 in collateral and a five year loan, a substantially greater amount of money than in the present case and substantially longer contact with Minnesota than in the present case. In addition, *Marquette* pre-dates the United States Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and the Eighth Circuit's decisions in *Scullin Steel* and *Mountaire.* These more recent cases should be given greater weight than *Marquette.*

■ Contrary to the defendant's assertions, the Court finds that service of process was proper. Minnesota Rule of Civil Procedure 4.03, which governs the form of service of process upon an individual, states as follows:

Service of summons within the state shall be made as follows:

(a) Upon an Individual. Upon an individual by delivering a copy to him personally or by leaving a copy at his usual place of abode with some person of suitable age and discretion then residing therein.

The plaintiff has supplied the affidavit of its private process server, McWilliams, who describes the defendant's wife in great detail and claims to have handed the documents to her. The detail provided in McWilliams' affidavit makes it credible. There is no dispute that the defendant actually received notice of the suit. Clearly, the defendant has not been harmed or prejudiced in any way by the method of service. The Court finds that the plaintiff has carried its burden in demonstrating that Stein was properly served with the complaint.

■ The plaintiff indicated at the hearing on the defendant's motions that it preferred to have its suit transferred to another district rather than dismissed if the Court found that it did not have personal jurisdiction over Stein. Since the suit could have been brought in the Northern District of Illinois and since several witnesses are

located in that district, the Court finds that a transfer of venue is in the interest of justice.

Accordingly, IT IS ORDERED that:

1. defendant Stein's motion to dismiss or to quash service of process is denied;

2. defendant Stein's motion for a transfer of venue is granted and that this entire case shall be transferred to the United States District Court for the Northern District of Illinois.