726 F.Supp. 754 (1989)
CPC-REXCELL, INC., Plaintiff,
v.
LA CORONA FOODS, INC., Defendant.
No. 89-1884C(1).
United States District Court, E.D. Missouri, E.D.
December 11, 1989.
*755 William Sauerwein, Clayton, Mo., for plaintiff.
William Travis, Greenfelder, Hemke & Gale, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff, a plastic products manufacturing company, brings this action against defendant, a processor and distributor of yogurt products, alleging that defendant breached their contract by failing to pay for plastic products that plaintiff shipped to defendant. Plaintiff further alleges that plaintiff relied to its detriment upon defendant's representations that defendant would purchase large amounts of plastic products manufactured especially for defendant. Because plaintiff is a Missouri corporation and defendant an Arizona corporation, defendant removed this action to federal court on the basis of diversity, pursuant to 28 U.S.C. § 1441 and § 1332(c). This matter is now before the Court on defendant's motion to dismiss for lack of personal jurisdiction.
In passing on a motion to dismiss for lack of personal jurisdiction in a diversity action, the Court must determine first, whether there is personal jurisdiction over the non-resident defendant under the state long-arm statute and second, whether the exercise of personal jurisdiction over defendant would violate the due process clause of the Fourteenth Amendment. Precision Construction Co. v. J.A. Slattery Co., 765 F.2d 114, 115 (8th Cir.1985). The party seeking to invoke federal jurisdiction has the burden of establishing that jurisdiction exists. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982).
As to the first inquiry, the Missouri long-arm statute provides in pertinent part:
1. Any person or firm, ... or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits ... to the jurisdiction of courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting;
(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.
2. ....
3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
Mo.Rev.Stat. § 506.500 (1986).
With respect to the second inquiry, the due process clause of the Fourteenth Amendment requires that a non-resident defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation'." Calder v. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there". World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.
*756 According to the affidavits submitted by defendant, defendant is not authorized to conduct business in Missouri, has no agent, office or personnel in Missouri, owns no real property in Missouri and does not manufacture, sell or advertise its products in Missouri. Defendant further represents that none of its representatives has ever set foot in Missouri and that its only contacts with Missouri have been by mail and telephone. According to defendant, the initial discussions which led to the contractual arrangement in question occurred at defendant's office in Arizona in October of 1986. Further discussions occurred between defendant's Arizona office and plaintiff's personnel in California and plaintiff's North Carolina manufacturing facility. Defendant notes follow-up discussions also took place between defendant's personnel in Arizona and plaintiff's personnel in Illinois. Defendant acknowledges that a sample of rejected goods were sent by Federal Express to plaintiff's St. Louis office, but notes that any other "nonconforming" goods that were returned to plaintiff were shipped to either Arizona or California. Defendant also acknowledges that all payments to plaintiff were transmitted to St. Louis.
Plaintiff states that in March of 1988, plaintiff notified all of its customers that its headquarters was being moved to St. Louis, Missouri. Plaintiff emphasizes that from April of 1988 through December of 1988, defendant ordered 37,641,000 product units from plaintiff by telephone, mail and telefax. Plaintiff notes that defendant's orders were confirmed by the mailing of 193 invoices from plaintiff's St. Louis office to defendant in Arizona. Plaintiff adds that defendant ordered 29,810,000 product units from plaintiff in 1989, which resulted in the mailing of 123 invoices from St. Louis. In addition, plaintiff extensively outlines the clerical activity that a single telephone or telefax order from defendant would generate in plaintiff's St. Louis office. Plaintiff also notes that defendant usually followed up telefax orders with a telephone call to St. Louis.
Clearly defendant's only contacts with the State of Missouri were its telephone and telefax orders to plaintiff's St. Louis office and defendant's correspondence by mail with St. Louis. Plaintiff acknowledges that the Eighth Circuit held in Scullin Steel v. National Ry. Utilization Corp., 676 F.2d 309 (8th Cir.1982), that the mailing of payments to Missouri and telephone calls and mail directed to Missouri, absent additional contacts, are insufficient to constitute the "transaction of business" within the meaning of the Missouri long-arm statute. Nonetheless, plaintiff insists that defendant both transacted business in Missouri within the meaning of § 506.500.1(1) and made contracts in Missouri within the meaning of § 506.500.1(2). Plaintiff argues that Missouri courts have held that the long-arm statute was intended to provide for jurisdiction "to the full extent permitted by the due process clause of the Fourteenth Amendment." Plaintiff further argues that the Supreme Court's decision in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), expanded the notion of "minimum contacts" to conform to the realities of "modern commercial life." Burger King, 471 U.S. at 476, 105 S.Ct. at 2184. Plaintiff contends that under the Supreme Court's decision in Burger King, telephone and telefax communications are sufficient to establish "minimum contacts". Burger King was decided after the Eighth Circuit's decision in Scullin Steel. Thus, plaintiff concludes, because Missouri's long-arm statute reaches to the extent allowed by the due process clause, State ex rel. Metal Serv. Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. en banc 1984), Burger King implicitly overrules Scullin Steel.
In Burger King, the Supreme Court emphasized the need for "a `highly realistic' approach [to personal jurisdiction] that recognizes that a `contract' is `ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" Burger King, 471 U.S. at 479, 105 S.Ct. at 2185, citing Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316-317, 63 S.Ct. 602, 604- *757 605, 87 L.Ed. 777 (1943). The Court identified the factors of (1) prior negotiations and contemplated future consequences; (2) the terms of the contract; and (3) the parties' actual course of dealing as critical in determining whether minimum contacts have been established. Burger King, 471 U.S. at 479, 105 S.Ct. at 2185. The Court noted that the "inescapable fact[s] of modern commercial life" may obviate the need to be physically present in a state in which business is transacted. Id. The Court maintained, however, that an actor must still be found to have purposefully directed commercial efforts toward the residents of another state before he will be answerable to suit in that state. Id. Likewise, a defendant's own contacts must still create a "substantial connection" with the forum state. Id. at 475, 105 S.Ct. at 2183.
Even assuming that Burger King made inroads on the decision in Scullin Steel, this Court concludes that defendant's contacts with Missouri were insufficient to establish that defendant either "purposefully directed" commercial efforts toward the residents of Missouri or that defendant's activities made it forseeable that it would be haled into court in Missouri. Defendant's most significant contacts with plaintiff were directed towards plaintiff's representatives in Arizona, California and North Carolina. All negotiations occurred in Arizona and California. Plaintiff's products were manufactured in and shipped from its plant in North Carolina.[1] Furthermore, when the parties entered into the arrangement in question, plaintiff's "headquarters" was not located in St. Louis. Rather, more than a year after the parties initiated discussions, plaintiff announced to its customers that its formal headquarters would be moved to St. Louis. Taking into account the nature and extent of defendant's contacts with plaintiff's representatives in states other than Missouri, this Court cannot conclude that defendant's isolated contacts with the State of Missouri are sufficient to satisfy the requirements of the due process clause.[2]
Accordingly, and for the foregoing reasons, defendant's motion to dismiss will be granted.
NOTES
[1] The Court notes that although plaintiff claims to have "accepted" defendant's orders by mailing invoices from St. Louis to Arizona, these invoices indicate that defendant's orders were shipped from plaintiff's plant in North Carolina before the invoices were prepared and mailed to defendant.
[2] Likewise, plaintiff's unilateral activities that were conducted in response to defendant's orders are insufficient to establish the contacts requisite to satisfying the requirements of due process. See Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1977).