**BELL PAPER BOX, INC.,**
**Plaintiff–Appellant,**

v.

**TRANS WESTERN POLYMERS,**
**INC., Defendant–Appellee.**

No. 94–2391.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1994.

Decided April 28, 1995.

Scott N. Heidepriem, Sioux Falls, SD, argued, for appellant.

Michael B. Crew, Sioux Falls, SD, argued, for appellee.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Bell Paper Box appeals from the district court's[1] order dismissing its action against Trans Western Polymers, Inc., for lack of personal jurisdiction. We affirm.

On January 19, 1993, Bell commenced this contract action in South Dakota state court. Pursuant to 28 U.S.C. §§ 1332 (1988) and 1441 (1988 & Supp. V 1993), Trans Western removed the case to the South Dakota federal district court and then moved to dismiss for lack of personal jurisdiction. The district court heard argument on the motion and, on May 5, 1994, granted Trans Western's motion to dismiss.

Bell, a South Dakota corporation, has its principal place of business in Sioux Falls, South Dakota. Bell manufactures printed folding cartons for various types of products. Trans Western is a California corporation with its principal place of business in Livermore, California. All of Trans Western's facilities and employees are in California, and all of its officers, directors, and shareholders are California residents.

Bell arranged for Peter Berman, a self-employed broker in California, to solicit business for Bell with San Francisco Bay area companies. On Bell's behalf, Berman solicited Trans Western for an order for plastic cutlery packaging. During the negotiations, all contacts between Berman and Trans Western occurred in California. Bell and Trans Western communicated by phone, facsimile and mail. Some of the communications were routed through Berman. Trans Western sent films to South Dakota which Bell matched to the die's outline. On one occasion, Mark Graham, President and C.E.O. of Bell, traveled to California to meet with Trans Western representatives.

In April of 1992, Trans Western sent Bell a purchase order for packaging which Bell would manufacture in South Dakota. The

purchase order specified that Bell ship the products "F.O.B. Livermore, California." Bell's acknowledgment form provided that the agreement be "construed in accordance with the laws of the state of South Dakota." Just before production was scheduled to begin, Trans Western sent Graham a registered letter requesting that Bell cease production of the products due to order cancellations.

Shortly after Bell filed this action, Trans Western's president, Joon Bai, flew to South Dakota to discuss Trans Western's future packaging needs and potential settlement of the lawsuit. On January 7, 1993, Bai met with Bell officials and toured Bell's facility in South Dakota. Before this, no one from Trans Western had traveled to South Dakota in connection with the business dealings in issue here.

Bell argues that it made a prima facie showing that Trans Western had sufficient contacts with South Dakota for the court to exercise personal jurisdiction over Trans Western within the parameters of due process. However, the district court held that Trans Western did not have the requisite minimum contacts with South Dakota and granted the motion to dismiss for lack of jurisdiction.

We review de novo whether Bell has established a prima facie case of personal jurisdiction. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991). Because South Dakota applies its long-arm statute to the fullest extent permissible under due process, *Ventling v. Kraft*, 83 S.D. 465, 161 N.W.2d 29, 34 (1968), we need only determine "whether exercise of personal jurisdiction comports with due process." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994) (citations omitted). Due process requires both minimum contacts with the forum state and accord with the notions of " 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66

1. The Honorable John Bailey Jones, Chief United States District Judge for the District of South Dakota.

S.Ct. 154, 160, 90 L.Ed. 95 (1945)); *Dakota Indus.*, 946 F.2d at 1389. "[T]he constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum State." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (internal quotations and citation omitted).

To evaluate the propriety of jurisdiction, "[w]e consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dakota Indus.*, 946 F.2d at 1390 (citing *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338 (8th Cir.1983)). The most important factors are those which analyze forum contacts. *Id.; Burger King*, 471 U.S. at 476-78, 105 S.Ct. at 2184-85 ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.") (internal quotations and citation omitted).

To maintain personal jurisdiction, Trans Western's contacts with South Dakota must be more than "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (citations and internal quotations omitted). Trans Western must have purposefully availed itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Actions by Trans Western *itself* must have created a "substantial connection" with the forum. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). This has not occurred. Rather, Bell employed Berman in California. Bell, through Berman, solicited Trans Western's business in California. Trans Western employed no one in South Dakota and sent no representatives to South Dakota before this suit.[2] Only a single purchase order links Trans Western to South Dakota. "Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). This is particularly true when the nonresident defendant is a buyer, rather than a seller. *See Precision Const. Co. v. J.A. Slattery Co.*, 765 F.2d 114, 118 (8th Cir.1985). Although Trans Western fully anticipated performance by Bell in South Dakota, " 'foreseeability' [of an impact within the forum] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980); *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 313 n. 5 (8th Cir.1982).

The unrelated case of *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816 (8th Cir.1994) (upholding the exercise of personal jurisdiction) is instructive, but distinguishable. In *U.S. Kids*, "the subject matter of [the] dispute occurred entirely within the forum state." *Id.* at 819. Representatives from U.S. Kids visited South Dakota, and the contract, including delivery, was entirely performed in South Dakota. *Id.* Here, by contrast, no Trans Western representatives visited South Dakota before suit, and, although Bell was to manufacture in South Dakota, Bell was to deliver the product "F.O.B. Livermore, California." Bell " 'was contractually obligated to make delivery [at the F.O.B. site], not elsewhere,' " *id.* (quoting *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1365 (7th Cir.1985)), and, under this arrangement, Trans Western did not seek the benefits of South Dakota police or fire protection as did U.S. Kids.

Bell relies on *Watlow Electric Manufacturing Co. v. Patch Rubber Co.*, 838 F.2d 999 (8th Cir.1988) (reversing a dismissal for lack

---

2. Although minimum contacts "need not include physical presence at all," contacts must be more than "attenuated" to support jurisdiction. *U.S. Kids*, 22 F.3d at 820; *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. Here, they are not.

of personal jurisdiction). *Watlow* is also inapposite. In *Watlow*, an out-of-state buyer (Patch) returned a form postcard preprinted by the in-state seller (Watlow), requesting a catalog of Watlow's products. *Id.* at 1000. Patch then sent heaters and raw materials to Watlow in the forum state for incorporation into the final product. *Id.* Before Watlow filed suit, a Patch representative attended a six-hour meeting in the forum state regarding the manufacturing process and toured the facilities there. *Id.* We held that jurisdiction over Patch was supported by the combination of interstate communications extending into the forum, shipment of goods and raw materials into the forum, and physical presence in the forum. *Id.* at 1002. The case before us is distinguishable in at least three respects: (1) although Trans Western sent films into South Dakota which were matched to the outline of the die, Trans Western shipped no raw materials or other products into the state; (2) Trans Western had no physical presence in the forum before Bell initiated this action; and, (3) although Patch did more than communicate interstate, Trans Western did not. As discussed above, interstate communications alone are not sufficient to confer jurisdiction.

Bell makes much of the choice of law clause in the acknowledgement form signed by Trans Western. However, choice of law analysis is distinct from minimum contacts analysis. *Burger King,* 471 U.S. at 481–82, 105 S.Ct. at 2187. Although relevant to the jurisdictional question, a contractual choice of law clause is insufficient to confer jurisdiction without other "deliberate affiliation" with the forum. *Id.* at 482, 105 S.Ct. at 2187.

Taken as a whole, the contacts between Trans Western and South Dakota are insufficient to support jurisdiction. The use of interstate facilities, such as telephones or mail, is a "secondary or ancillary" factor "and cannot alone provide the 'minimum contacts' required by due process." *Scullin Steel,* 676 F.2d at 314; *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 655–56 (8th Cir. 1982). Because Trans Western has only ancillary contacts with South Dakota, we affirm the district court's dismissal of this action for lack of personal jurisdiction.

WOLLMAN, Circuit Judge, dissenting.

The due process principles driving personal jurisdiction analysis point toward the permissible exercise of jurisdiction in this case. The court's opinion isolates all of the contacts present in this case (a contract with a South Dakota corporation to produce goods in South Dakota, foreseeability of impact of the contract on the residents of South Dakota, interstate communications and the shipment of camera-ready film in anticipation of the contract, and the choice of law clause) and states that, without more, these are insufficient to support the exercise of jurisdiction. Although each of these factors alone may be insufficient, they are all present here. Most importantly, however, they are all present in such a manner that demonstrates that the exercise of jurisdiction in this instance would not offend due process of law.

An inquiry as to the propriety of jurisdiction should not turn on a mere counting of the contacts, but rather on whether those contacts relate to the maintenance of South Dakota as the forum in accord with "fair play and substantial justice." Although I agree that there are insufficient contacts to support the assertion of general jurisdiction over Trans Western, the exercise of specific jurisdiction over this particular contract dispute lies well within the recognized constraints of due process. *See Bell Paper Box v. U.S. Kids,* 22 F.3d 816, 819 (8th Cir.1994) (relatedness of contacts to the dispute is most probative factor); *see also McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957) (finding jurisdiction permissible from the mailing of a single insurance contract to the forum state). The contacts present here directly gave rise to the cause of action and were in no way random, fortuitous, or attenuated. Further, although choice of law analysis is distinct from that of minimum contacts, the choice of law clause itself makes evident that Trans Western availed itself of the benefits and burdens of South Dakota law and should have foreseen the possibility of being haled into a South Dakota court to defend itself on a claim on this particular contract. *See Burger King v. Rudzewicz,* 471 U.S. 462,

481–82, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985). Such a provision was absent in *U.S. Kids,* where we nevertheless found jurisdiction permissible. Finally, although it is a secondary consideration, South Dakota does have an interest in protecting its citizens, providing them a convenient forum, and enforcing its laws. *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182.

Although Trans Western faces some inconvenience (as would any corporation facing suit in foreign state), there is no showing of unfairness or unreasonableness that would rise to the level of a constitutional violation. *See id.* at 476–77, 105 S.Ct. at 2184 (lesser showing of contacts necessary when notions of "fair play and substantial justice" point towards allowing jurisdiction); *see also id.* at 485–86, 105 S.Ct. at 2189–90 (noting that facts of each case must be weighed to resolve the due process inquiry). Trans Western cannot now invoke a "territorial shield to avoid" voluntarily assumed obligations purposefully directed towards the forum. *Id.* at 474, 105 S.Ct. at 2183; *see U.S. Kids,* 22 F.3d at 820 (requiring only "that a commercial actor purposefully direct its efforts toward residents of the forum state"). The very reason we require minimum contacts is to ensure the advancement of fundamental fairness. Trans Western has made no showing that the exercise of jurisdiction in South Dakota would be oppressive or unfair on any level. Indeed, Trans Western has not even proffered an argument to that effect. *See Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184 (where defendant purposefully directs activities at forum, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"); *Watlow Elec. Mfg. v. Patch Rubber Co.,* 838 F.2d 999, 1003 (8th Cir. 1988).

Accordingly, I respectfully dissent.