736 F.2d 485
 221 U.S.P.Q. 1140, 1984 Copr.L.Dec. P 25,637,
15 Fed. R. Evid. Serv. 116
 Mark LANDSBERG, Plaintiff-Appellee,
v.
SCRABBLE CROSSWORD GAME PLAYERS, INC.; Selchow & Righter
Co.; and Crown Publishers, Defendants-Appellants.
Mark LANDSBERG, Plaintiff-Appellee-Cross-Appellant,
v.
CROWN PUBLISHERS, INC.; Selchow & Righter Co.; and
Scrabble Crossword Game Players, Inc.,
Defendants-Appellants, Cross-Appellees.
 Nos. 80-6083, 82-5467, 82-5504.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1983.
Decided March 5, 1984.
As Amended on Denial of Rehearing
and Rehearing En Banc July 3, 1984.
 
 H. Michael Brucker, Oakland, Cal., for Landsberg.
 Walter D. Ames, Watson, Cole, Grindle & Watson, Washington, D.C., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, TANG and FLETCHER, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Mark Landsberg recovered judgments of copyright infringement under California and federal law. Defendants appeal.
 
 I. FACTS
 
 2
 Landsberg developed a systematic strategy for playing Scrabble and became the acknowledged Scrabble champion of Southern California. He committed his system to writing in a manuscript entitled "Championship Scrabble Strategy." In 1972 Landsberg took steps to publish the manuscript and requested permission to use the word "Scrabble" from Selchow and Righter (S & R), owner of the Scrabble trademark and producer of Scrabble brand crossword games. S & R requested that Landsberg send a copy of his manuscript to them for evaluation, and he did so.
 
 
 3
 S & R had been considering the preparation of a Scrabble Players Handbook and had hired an editor, but had developed nothing of substance at the time the Landsberg manuscript arrived. S & R immediately sent a copy of Landsberg's manuscript to Michael Senkiewicz, an expert Scrabble player, and asked that he evaluate Landsberg's work. Senkiewicz found on the whole that it was excellent. S & R then entered into a contract with Senkiewicz to produce a section on Scrabble strategy for the S & R Handbook. Part of the contract included an outline that the district court found Senkiewicz had copied from Landsberg's manuscript. Meanwhile, S & R entered into "negotiations" with Landsberg for rights in his manuscript, which the district court found were a bad faith tactic to keep Landsberg dangling while S & R was preparing its own Handbook based on Landsberg's work. Landsberg finally demanded that S & R return or destroy all copies of his manuscript in S & R's possession. The district court found that S & R not only kept copies, but Senkiewicz used his copy of the manuscript as the basis for his section of the Scrabble Players Handbook. S & R severed its relationship with Landsberg shortly before S & R brought out its own Handbook.
 
 
 4
 Landsberg sued S & R, its subsidiary, Scrabble Crossword Game Players, Inc., and Crown Publishers in Los Angeles County Superior Court on several causes of action, including "piracy of literary property" (infringement of common law copyright) and breach of contract. Defendants successfully moved to have the case removed to United States District Court pursuant to 28 U.S.C. Sec. 1441. After a blizzard of motions by S & R, many found obstructionist and frivolous by the district court, the court tried the case and rendered judgment for Landsberg on his common-law copyright cause of action.
 
 
 5
 In its findings of fact, the court found that denials of bad faith use of Landsberg's manuscript and copying from it by Senkiewicz and S & R were "not to be believed" and were "untrue." The court found that S & R at all times had access to Landsberg's manuscript, surreptitiously retained copies of it and engaged in wholesale copying of both Landsberg's ideas and the form of expression that he used in his manuscript.
 
 
 6
 Although S & R did not use verbatim portions of Landsberg's work, the trial court found that S & R had paraphrased a significant part of what Landsberg had written and created a Handbook substantially similar to Landsberg's manuscript. The court granted Landsberg actual and exemplary damages. It also awarded attorneys' fees and costs under 17 U.S.C. Sec. 505 and the vexatious litigant rule.
 
 
 7
 S & R ignored the judgment and continued to sell and print its Handbook. Landsberg sued again for continuing copyright infringement, this time under the 1976 Copyright Act, Title 17 U.S.C., rather than California law because of the preemptive effect of 17 U.S.C. Sec. 301(a). The court granted Landsberg summary judgment and damages, but denied his claim for further exemplary damages because there is no provision for such damages under the 1976 Copyright Act.
 
 
 8
 S & R appeals from both judgments of the district court. Landsberg appeals the denial of exemplary damages in his second action.
 
 II. COPYRIGHT
 
 9
 A. Applicable law.
 
 
 10
 California law governs Landsberg's first action, because his claim states a cause of action arising from "undertakings commenced before January 1, 1978," 17 U.S.C. Sec. 301(b)(2), and federal law governs Landsberg's second action, because it complains of infringement taking place after that date. But, at least as far as the question of infringement goes, it makes no difference which law applies. California appears to follow federal copyright cases on the question of infringement. See, e.g., Weitzenkorn v. Lesser, 40 Cal.2d 778, 256 P.2d 947, 956-957 (1953); Stanley v. Columbia Broadcasting System, 35 Cal.2d 653, 221 P.2d 73, 78 (1950); Barsha v. Metro-Goldwyn-Mayer, 32 Cal.App.2d 556, 560, 90 P.2d 371, 374 (1939). Neither Landsberg nor S & R have cited California cases to us on the question of infringement, relying instead on federal cases. Therefore we will assume that California law parallels federal law on the question of infringement and analyze this case according to federal law.
 
 
 11
 B. Infringement.
 
 
 12
 To make out infringement, the plaintiff must establish that he owns the copyright in the work in question, that the defendant had access to the copyrighted work, and that there is "substantial similarity not only of the general ideas [of the works] but of the expression of those ideas as well." Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir.1977). In this case, it is undisputed that Landsberg owns the copyright in his work, and that S & R had access to it. The case turns on the issue of substantial similarity.
 
 
 13
 Similarity of expression must be established because it is an axiom of copyright law that copyright protects only an author's expression of an idea and not the idea itself. 17 U.S.C. Sec. 102(b); Mazer v. Stein, 347 U.S. 201, 217-218, 74 S.Ct. 460, 470-471, 98 L.Ed. 630 (1954).[1] Corollary to this axiom is a strong policy permitting all to use freely the ideas contained in a copyrighted work so long as copyrighted expression is not appropriated.
 
 
 14
 One consequence of the policy in favor of free use of ideas is that the degree of substantial similarity required to show infringement varies according to the type of work and the ideas expressed in it. Cf. Krofft, 562 F.2d at 1167-68. Some ideas can be expressed in myriad ways, while others allow only a narrow range of expression. Fictional works generally fall into the first category. The basic idea of a fictional work might be that classic, boy meets girl. This idea can be expressed, as it has been through thousands of years of literature, with infinite variations in setting, sequence of incident, and characterization. An author wishing to write yet another work using the "boy meets girl" idea can choose from a wide range of materials in composing his or her own expression of the idea. Therefore a new work incorporating that idea need not be a verbatim copy or close paraphrase of an earlier work to infringe that work. A resemblance in details of setting, incident, or characterization that falls short of close paraphrase may be enough to establish substantial similarity and infringement. See, e.g., Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). Similarly, the Krofft court noted that the defendants there could choose from myriad ways to create puppets that would express the idea contained in plaintiff's television series--"a fantasyland filled with diverse and fanciful characters in action." 562 F.2d at 1165. As a result, although defendants pointed to numerous differences between their puppets and plaintiff's, they were still held to be substantially similar.
 
 
 15
 Factual works are different. Subsequent authors wishing to express the ideas contained in a factual work often can choose from only a narrow range of expression. For example, Landsberg's work states that "[t]he poor player simply attempts to make as many points as possible each turn." The idea contained in that statement cannot be expressed in a wide variety of ways. Just about any subsequent expression of that idea is likely to appear to be a substantially similar paraphrase of the words with which Landsberg expressed the idea. Therefore, similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed. 1 M. Nimmer, Nimmer on Copyright, Sec. 2.11[A]-[B] (1968).
 
 
 16
 Hoehling v. Universal City Studios, Inc., 618 F.2d 972 (2d Cir.1980), cert. denied, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980), illustrates this. Hoehling wrote a factual account of the destruction of the dirigible Hindenburg in which he theorized that Eric Spehl, a rigger on the Hindenburg, caused the explosion. Hoehling claimed that Universal had infringed his copyright by using his theory in a motion picture on the disaster. Universal's use of Hoehling's description of how Spehl sabotaged the Hindenburg might have been held a substantially similar infringement if Hoehling had written a fictional work. But because Hoehling's theory related to historical fact, Universal's use of it did not infringe so long as Universal did not "bodily appropriate" Hoehling's expression. 618 F.2d at 980. See also Miller v. Universal City Studios, Inc., 650 F.2d 1365 (5th Cir.1981).
 
 
 17
 The doctrine of scenes a faire is another illustration of how the substantial similarity that constitutes infringement varies according to the idea expressed. Under that doctrine, a second author does not infringe even if he reproduces verbatim the first author's expression, if that expression constitutes "stock scenes or scenes that flow[ ] necessarily from common unprotectable ideas," See v. Durang, 711 F.2d 141, 143 (9th Cir.1983), because to hold otherwise would give the first author a monopoly on the commonplace ideas behind the scenes a faire.
 
 
 18
 C. S & R's Handbook.
 
 
 19
 We have reviewed Landsberg's work, S & R's work, and Exhibit 45, a comparative table of similarities between the two works. While we find similarities between the two works, we think there is no more than the similarity that must unavoidably be produced by anyone who wishes to use and restate the unprotectable ideas contained in Landsberg's work. If we were to hold S & R's work to be an infringement, we do not see how anyone could state Landsberg's ideas without also being held to have infringed. Landsberg would in effect have obtained a copyright on the ideas contained in his work.
 
 
 20
 The substantial similarity inquiry will vary according to the context in which it is applied. The copyright law protects expression of unprotectable ideas only insofar as is possible without protecting the ideas themselves. The district court therefore applied the substantial similarity test too broadly by expanding it to cover Landsberg's ideas and stock expressions.
 
 
 21
 S & R's work does not duplicate the selection, coordination, and arrangement of the ideas in Landsberg's work, so we need not decide whether a work that rephrased in the same order as the original a substantial part of the ideas in another work might be held to infringe that work as a compilation, see 17 U.S.C. Secs. 101, 103, even though none of the rephrasings of the individual ideas would constitute infringement when viewed in isolation.
 
 III. CONTRACT REMEDY
 
 22
 Landsberg cannot recover under the copyright laws, but he may have a remedy in California contract law. Landsberg alleged as his second cause of action that S & R had breached a contract to pay him for the use of his Strategy Book. California law will enforce a contract, whether express or implied-in-fact, to pay for the disclosure of an uncopyrightable idea. Weitzenkorn v. Lesser, 40 Cal.2d at 790-791, 256 P.2d at 957-59; Desny v. Wilder, 46 Cal.2d 715, 299 P.2d 257 (1956).
 
 
 23
 The district court found as a fact that "[b]ased upon S & R's conduct, Plaintiff reasonably believed that S & R would not use or copy his manuscript, or any portion thereof, without his consent and without payment to him of an acceptable sum." This is conduct that can create an implied-in-fact contract. However, an implied-in-fact contract to pay for the conveyance of an idea will be enforced only if circumstances and conduct manifesting the terms and existence of a contract precede or attend disclosure of the idea. Desny v. Wilder, 46 Cal.2d at 738, 299 P.2d at 270. The district court made no findings on this point.
 
 
 24
 It is true that Landsberg's first disclosure of his manuscript to S & R, when he requested permission to use the Scrabble mark, apparently preceded any conduct on S & R's part indicating the existence of an implied-in-fact contract. However, we cannot hold as a matter of law that as a result no implied-in-fact contract was formed. Landsberg's initial disclosure of his manuscript to S & R may have been made in confidence, and if so, S & R's use of the disclosed ideas would have been wrongful. Faris v. Enberg, 97 Cal.App.3d 309, 158 Cal.Rptr. 704 (1979); Davies v. Krasna, 245 Cal.App.2d 535, 54 Cal.Rptr. 37 (1966); Donahue v. Ziv Television Programs, Inc., 245 Cal.App.2d 593, 593, 54 Cal.Rptr. 130, 130 (1966) (dictum); Thompson v. California Brewing Co., 150 Cal.App.2d 469, 310 P.2d 436 (1957). See Davies v. Krasna, 14 Cal.3d 502, 512, 535 P.2d 1161, 1167, 121 Cal.Rptr. 705, 711 (1975). If Landsberg's original disclosure to S & R was in confidence, Landsberg cannot be said to have "blurt[ed] out his idea without having first made his bargain," Desny, 46 Cal.2d at 738, 299 P.2d at 270, and he should therefore not be held to have lost the opportunity to be the beneficiary of an implied-in-fact contract with S & R.
 
 
 25
 S & R's request for a second copy of Landsberg's manuscript may constitute conduct creating an implied-in-fact contract binding S & R to pay for Landsberg's ideas when used. See Minniear v. Tors, 266 Cal.App.2d 495, 504, 72 Cal.Rptr. 287, 294 (1968). We remand to the district court for further proceedings on Landsberg's breach of contract claim.
 
 IV. OTHER ISSUES
 
 26
 A. Exclusion of hearsay.
 
 
 27
 S & R claims that at numerous points in the trial the judge erroneously sustained objections to hearsay. An analysis of each of the instances listed by S & R shows that the exclusions of hearsay were justified. In most of the cases, the testimony was directed at proving the truth of irrelevant allegations about Landsberg by quoting statements made by the witness to other persons out of court. In each case the witness could have been asked what Landsberg had done, not what the witness said he had said Landsberg had done. The objections to hearsay were properly sustained. Fed.R.Evid. 801(c), 802.
 
 
 28
 B. Denial of motion to amend.
 
 
 29
 S & R claims that the court erred in denying its motion to amend its answer one year after the final disposition in the case was filed. The court's denial of the dilatory and futile motion was proper. See PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 417 F.2d 659 (9th Cir.1969), cert. denied, 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99 (1970) (affirming denial of amendment 19 months after complaint had been filed). Vickery v. Fisher Governor Company, 417 F.2d 466 (9th Cir.1969) (affirming denial of amendment offered after entry of judgment).
 
 
 30
 C. Findings of Fact.
 
 
 31
 S & R asserts that the district court erred in using fact findings submitted by the winning side. It is true that the adoption of findings submitted by one of the parties necessitates close review of the facts by an appellate court, but it does not constitute reversible error unless the findings are clearly unsupported by substantial evidence. Here the findings, with the exception of those relating to substantial similarity, were supported by the evidence and both sides were permitted to file suggested findings and objections to findings. The court made its final choice of findings without undue prompting by either side. This was not reversible error. Photo Electronics Corp. v. England, 581 F.2d 772, 776-77 (9th Cir.1978).
 
 
 32
 D. Statute of Limitations.
 
 
 33
 S & R claims that Landsberg's copyright infringement action was barred by the two-year California statute of limitations because S & R published an article about the notational system it had taken from Landsberg in 1973, more than two years before Landsberg brought this action. Although we have held that Landsberg has no infringement remedy, we briefly discuss this issue because limitations may also be an issue in Landsberg's contract cause of action on remand.
 
 
 34
 The two-year statute of limitations applies to an action on a contract not evidenced by a writing, such as Landsberg has alleged here. Cal.Code Civ.Proc. Sec. 339 (West 1982). However, we cannot say that Landsberg's action is barred. First, it is not clear that S & R's limited use of Landsberg's notational system in a newsletter not distributed to the general public is the sort of use for which the alleged implied-in-fact contract between Landsberg and S & R contemplated payment. See Donahue v. Ziv Television Programs, Inc., 245 Cal.App. at 611, 54 Cal.Rptr. at 141. If it is not, then the contract was not breached until S & R published its handbook, and Landsberg's suit was timely filed. Second, even if S & R did breach its contract with Landsberg when it used Landsberg's notational system in its newsletter, Landsberg may still be able to avoid the statute of limitations. He has alleged that S & R fraudulently engaged in bad faith negotiations for the rights to his work. If this fraud prevented him from discovering S & R's use of his material in its newsletter, the statute of limitations was tolled until he discovered the fraud, or should have discovered it in the exercise of due diligence. Sears, Roebuck and Co. v. Blade, 139 Cal.App.2d 580, 294 P.2d 140 (1956).
 
 
 35
 E. Attorneys' Fees.
 
 
 36
 S & R claims that the court erred in awarding Landsberg costs and attorneys' fees. Because we have held that there was no infringement, an award of attorneys' fees cannot be justified on the basis of the copyright statute. However, if on remand Landsberg prevails on his contract cause of action, an award of attorneys' fees may well be justified by S & R's vexatious, oppressive, obdurate and bad faith conduct of this litigation. Local No. 149 I.U., U.A., A. & A.I.W. v. American Brake Shoe Co., 298 F.2d 212, 214-215 (4th Cir.1962); see Kelly v. Guinn, 456 F.2d 100 (9th Cir.1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3048, 37 L.Ed.2d 1041 (1973).
 
 
 37
 The judgment is vacated and the cause is remanded to the district court for further proceedings on the plaintiff's claims other than copyright infringement.
 
 
 
 [1]
 California law is in accord with federal law on this point. See former Cal.Civ.Code Sec. 980 (West 1982); Weitzenkorn v. Lesser, 40 Cal.2d 778, 789, 256 P.2d 947, 956 (1953)