**Keith E. IVERSON and Shirlee Iverson, Plaintiffs,**

v.

**Audrey GRANT, Eric Rodwell, Prentice–Hall Canada, Inc., Prentice Hall, Inc., Arco Publishing, Inc., Dennis Howard, Roy Green and American Contract Bridge League, Inc., Defendants.**

**No. CIV. 95–5024.**

United States District Court,
D. South Dakota,
Western Division.

April 2, 1996.

---

Keith E. Iverson, Keystone, SD, pro se.

Gene Lebrun, Lynn Jackson Shultz & Lebrun, Rapid City, SD, for Defendant.

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BATTEY, Chief Judge.

### NATURE AND PROCEDURAL HISTORY

On April 10, 1995, plaintiffs Keith and Shirlee Iverson filed an amended complaint charging defendants with various counts of copyright infringement and unfair trade practice. Plaintiffs' counsel was granted leave to withdraw on August 24, 1995, and plaintiffs have continued to proceed pro se with this litigation.

On May 18, 1995, defendants Arco Publishing, Inc. (Arco) and Prentice–Hall Canada, Inc. (Prentice–Hall Canada) filed separate motions for dismissal pursuant to Fed. R.Civ.P. 12(b)(2)–(6). On June 30, 1995, defendant Audrey Grant (Grant) filed her motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(1)–(3). This Court issued an order converting the Rule 12(b) motions to motions for summary judgment under Fed.R.Civ.P. 56. On October 31, 1995, defendants Grant, Prentice–Hall Canada, Prentice–Hall, Inc. (Prentice–Hall), Arco, Roy Green (Green), and American Contract Bridge League, Inc. (ACBL) filed their motion for summary judgment. Defendant Dennis Howard (Howard) joined in defendants' motion for summary judgment on November 15, 1995. On November 29, 1995, defendant Eric Rodwell (Rodwell) joined in defendants' motion for summary judgment and filed a separate motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2)–(3). Defendants contend in their motion for summary judgment that they are entitled to a judgment as a matter of law based on the following grounds: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) expiration of the applicable statute of limitations, 17 U.S.C. § 507(b); (4) improper venue, 28 U.S.C. § 1400; and (5) the merits of the case. Plaintiffs have responded, and defendants have replied.

On November 17, 1995, plaintiffs filed a cross-motion for summary judgment on issues of liability and exemplary damages, further requesting an accounting by defendants in defendants' summary judgment action. Plaintiffs filed what appears to be a supplemental motion to their prior cross-motion for summary judgment on December 15, 1995. Defendants have responded.

### FACTS

This action arises out of alleged violations of the Copyright Act, 17 U.S.C. §§ 101 *et seq.* Prior to May 19, 1980, plaintiffs wrote and published through the Shirlee Company a soft bound pamphlet entitled *Contract Bridge—An Introductory System of Contract Bridge Permitting Instantaneous Play.* The pamphlet, 39 pages in length, contains the following six lessons for its readers: (1) determination of partnerships and the deal; (2) evaluation and classification of the hand; (3) elements of the bid; (4) elements of the auction; (5) play of the hand; and (6) scoring of the hand. In addition to the six lessons, readers are advised of strategy in bidding, defensive bidding, popular conventions, strategy on the play of the hand, and bridge etiquette. The pamphlet provides a scoring table and a glossary of terms. It includes instructions on how to utilize an accompanying teaching aid called "DIAL–A–BID." On or about May 15, 1980, plaintiffs applied for a copyright registration. On May 19, 1980, plaintiffs received a certificate of registration, No. TXU 44–538, from the Register of Copyrights.

Count I of plaintiffs' complaint alleges that during and after 1984, defendant authors Grant and Rodwell, and defendant publishers Prentice–Hall Canada and Arco infringed on their copyright by publishing and placing on the market a book entitled *The Joy of Bridge. The Joy of Bridge,* 329 pages in length, contains five sections. The first section provides a commentary on bidding with-

out competition. It discusses how to get started, opening the bidding at the one-level, certain objectives, the captain, responding to a one no trump opening, messages of bidding, responding to opening bids of one in a suit, opener's rebid after a one- or two-level response, opener's rebid after a raise, responder's rebid after opener's minimum rebid, and responder's rebid after opener's medium or maximum rebid. The second section educates its reader about the concept of competitive bidding. It provides a commentary on the double, the overcall, responding to a one- or two-level overcall, the take-out double, responding to a take-out double, and the competitive auction. The third section further explores the bidding process by discussing such topics as the stayman convention, powerhouse hands, slam bidding, and preemptive opening bids. The fourth section provides suggestions on how to play the hand, such as the play of the cards, planning the play, and the defenders. The final section is the appendix which provides a glossary of terms, answers to exercises, a scoring summary, and five-card majors.

Count II of plaintiffs' complaint alleges that during and after 1986, defendant authors Grant and Rodwell, and defendant publishers Prentice–Hall Canada and Prentice–Hall, infringed plaintiffs' copyrighted work entitled *Contract Bridge* by publishing and placing on the market a book entitled *The Joy of Bridge Companion*. *The Joy of Bridge Companion* is 135 pages in length and provides exercises which place the theories outlined in *The Joy of Bridge* into practice. Each unit in *The Joy of Bridge Companion* corresponds to a chapter in the text of *The Joy of Bridge*.

Defendant Grant is and always has been a citizen of Toronto, Ontario, Canada. At the time Grant co-authored the two books entitled *The Joy of Bridge* and *The Joy of Bridge Companion*, she was residing in Toronto, Canada. At the time defendant Rodwell co-authored these two books with defendant Grant, he resided in Agincourt, Ontario, Canada. Thus, neither book was written in the United States. Defendant publisher Prentice–Hall Canada is a Canadian corporation with its principal place of business in Toron-

to, Ontario, Canada, and has never had a principal place of business in the United States. Defendant publisher Prentice–Hall is the parent company of Prentice–Hall Canada. All editorial decisions made by Prentice–Hall Canada regarding *The Joy of Bridge* and *The Joy of Bridge Companion* were made independently of parent company Prentice–Hall and without any requirement of shareholder approval of the parent company.

Prentice–Hall Canada published and distributed both *The Joy of Bridge* and *The Joy of Bridge Companion* in Canada and never directly in the United States. On March 1, 1984, defendant Prentice–Hall Canada, acting as a proprietor, entered into a licensing agreement with defendant Arco whereby Arco obtained the exclusive license to print, publish, and sell *The Joy of Bridge* in the United States. The license agreement was terminated on May 10, 1991. Pursuant to the termination, all of Arco's rights under the agreement reverted to Prentice–Hall Canada. Arco has not published any editions of *The Joy of Bridge* since the termination of the license. Defendant publisher Prentice–Hall is also the parent company of Arco. All licensing and publishing decisions made by Arco relating to *The Joy of Bridge* were made independently of parent company Prentice–Hall and without any requirement of shareholder approval of Prentice–Hall.

Count III of plaintiffs' complaint alleges that during and after 1987, defendant Grant as author, ACBL as publisher, and defendants Howard and Green as chief executive officers of ACBL, infringed plaintiffs' copyrighted work entitled *Contract Bridge* by publishing and placing on the market a book entitled *Bridge–Introduction to Bridge Bidding "Club Series"*. The book is 248 pages in length and contains the following eight lessons for its readers: (1) getting started; (2) objectives; (3) responses to one no trump opening bids; (4) responses to opening bids of one in a suit; (5) rebids by opener; (6) rebids by responder; (7) overcalls and responses; and (8) takeout doubles and responses. The book also provides a glossary of terms and sections on scoring, the stayman convention, strong opening bids, slam

bidding, preemptive opening bids, and balancing.

Defendant ACBL is a nonprofit New York corporation with its principal place of business in Memphis, Tennessee. Defendant Howard was employed as the CEO of ACBL from approximately April 6, 1992, through November 25, 1992. He is a citizen and permanent resident of Australia. Defendant Green is the current CEO of ACBL. In September of 1986, ACBL and Grant entered into an agreement whereby Grant would write a student and teacher text entitled *The Club Segment*. The first publication of *The Club Segment* was the work entitled *Bridge–Introduction to Bridge Bidding "Club Series"*. The latest revised edition was published in 1995. ACBL markets its publication of *Bridge–Introduction to Bridge Bidding "Club Series"* through product catalogs, in its monthly magazine entitled the *Bulletin*, in a teacher newsletter entitled *The Bridge Teacher*, in a student supplement mini-magazine, in promotions and advertisements that go with its TV series, in its membership promotions, and at the gift store at North American Bridge Championships.

## SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–90, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Recently, the Supreme Court noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

The trilogy of *Celotex*, *Anderson*, and *Matsushita* provide the Court with a methodology in analyzing both parties' motions for summary judgment. *See generally* 1 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 5.04 (2d ed. 1991) (discussing the standards for granting summary judgment that have emerged from *Matsushita*, *Celotex*, and *Anderson*). Under this trilogy, it is incumbent upon the nonmoving party, based upon the showing set forth by the moving party, to establish significant probative evidence to prevent summary judgment. *See Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 979 (8th Cir.1991).

## DISCUSSION

Defendants have set forth five grounds upon which they base their motion for summary judgment. First, defendants contend that this Court lacks subject matter jurisdiction over Counts I and II of plaintiffs' complaint because, *The Joy of Bridge* and *The Joy of Bridge Companion*, were not written within the borders of the United States. Defendants further assert that *The Joy of*

*Bridge Companion* was never even published in the United States. Second, defendants assert that this Court lacks personal jurisdiction over defendants Grant and Prentice–Hall Canada because Grant is a Canadian resident and Prentice–Hall Canada is a Canadian corporation, neither have a place of business, agent, or representative in South Dakota, they have no minimum contacts with South Dakota regarding the alleged infringement, and they are not otherwise found in South Dakota. Third, defendants contend that since defendants Grant and Prentice–Hall Canada lack the requisite minimum contacts with the forum, Counts I and II are improperly venued in South Dakota as to these defendants. Fourth, defendant Arco contends that plaintiffs' claim against it is barred by the applicable statute of limitations, 17 U.S.C. § 507(b), because Arco's license to publish *The Joy of Bridge,* was terminated on May 10, 1991. Fifth, all of the defendants contend that there is no genuine issue of material fact for trial based on the merits of the case. Defendants assert that neither of the authors, Grant or Rodwell, had access to the plaintiffs' pamphlet. Defendants further contend that even if there was access, there is no substantial similarity between the plaintiffs' pamphlet and any of the alleged infringing works. Plaintiffs' cross-motion for summary judgment largely pertains to defendants' final issue concerning the merits of the case which addresses accessability and substantial similarity. Therefore, the arguments presented in plaintiffs' cross-motion will be addressed within the discussion of defendants' position on the merits of this case.

## A. SUBJECT MATTER JURISDICTION

■ Subject matter jurisdiction is a threshold issue which must be assured in every federal action. *Kronholm v. Federal Deposit Ins. Corp.,* 915 F.2d 1171, 1174 (8th Cir.1990) (citing *Barclay Square Properties v. Midwest Fed. Sav. & Loan,* 893 F.2d 968, 969 (8th Cir.1990)). The jurisdictional statute for copyright claims, 28 U.S.C. § 1338(a), provides this Court with original jurisdiction over any civil action arising under federal copyright law. However, it is a long-standing principle that United States copyright

laws do not have extraterritorial operation. *Subafilms, Ltd. v. MGM–Pathe Communications,* 24 F.3d 1088, 1095–98 (9th Cir.1994) (en banc) (citing 3 David Nimmer & Melville B. Nimmer, *Nimmer on Copyright* § 12.04[A][3][b], at 12–86). *See also Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096, 1101 (2d Cir.1976). The party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936).

To aid in the resolution of the jurisdictional anomaly presented by this case, it is helpful to set forth a foundational overlay of the Copyright Act. According to the Copyright Act, "[c]opyright protection subsists ... in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). However, copyright protection for an original work of authorship does not extend "to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* at § 102(b). Section 106 of the Act grants a copyright holder exclusive rights to use and to authorize the use of his or her work in five qualified ways. The following three are pertinent to this case:

(1) Reproduction of the copyrighted work in copies;

(2) Preparation of derivative works based upon the copyrighted work; and

(3) Distribution of copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

*Id.* at § 106. Pursuant to section 501, "[a]nyone who violates any of the exclusive rights of the copyright holder ... is an infringer of the copyright...." *Id.* at § 501. In addition, "[i]mportation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired

outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501." *Id.* at § 602.

Defendants Grant, Rodwell, Prentice–Hall, Prentice–Hall Canada, and Arco contend that this Court lacks subject matter jurisdiction over Counts I and II of plaintiffs' complaint because *The Joy of Bridge* and *The Joy of Bridge Companion* were not written within the borders of the United States. These defendants further assert that *The Joy of Bridge Companion* was never even published in the United States. Plaintiffs contend that whether or not these writings occurred within the borders of the United States is immaterial when such writing is merely one of the infringing acts defendants have committed.

In support of their position, defendants have cited the Ninth Circuit Court of Appeal's decision of *Subafilms, Ltd. v. MGM–Pathe Communications,* 24 F.3d 1088, 1095–98 (9th Cir.1994) (en banc). The methodology exercised and the application of existing precedent to issues similar to those presented by this case persuades this Court to apply the Ninth Circuit's holding and rationale to the facts of this case. The dispute in *Subafilms* centered around the famous musical group *The Beatles* and the animated motion picture entitled *Yellow Submarine. Id.* at 1089. In 1966, *The Beatles,* through plaintiff Subafilms, entered into a joint venture with the Hearst Corporation to produce the motion picture. *Id.* An agreement was negotiated with United Artists Corporation (UA) to finance and distribute the film. *Id.* In the early 1980s, UA began entering into licensing agreements to distribute several of its films on videocassette. *Id.* However, UA refused to license *Yellow Submarine* as a result of the uncertainty over whether home video rights were granted by the earlier finance and distribution agreements. *Id.* In 1987, UA's successor company, MGM/UA Communications Co. (MGM/UA), authorized video distribution of the film. *Id.* Film distribution in the United States was completed through MGM/UA's home video subsidiary, and foreign distribution was handled by Warner Home Video, Inc., a subsidiary of Warner Bros., Inc. *Id.*

In 1988 Subafilms and Hearst filed suit against MGM/UA, Warner, and their respective subsidiaries alleging that the videocassette distribution, both foreign and domestic, constituted copyright infringement. *Id.* The case was initially tried before a special master who found for plaintiffs and awarded $2.2 million in compensatory damages. *Id.* The district court adopted the special master's factual findings and legal conclusions with the exception of the award of prejudgment interest. *Id.* A Ninth Circuit panel affirmed the district court's judgment. *Id.* at 1090 (citing *Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 988 F.2d 122 (9th Cir. 1993)). The panel affirmed the district court's holding with respect to liability for extraterritorial home video distribution of the film based partly upon the distributors' admission that the initial authorization to distribute the film internationally had occurred within the borders of the United States. *Id.* Upon rehearing en banc, the Ninth Circuit held that allegations of an authorization within the United States of infringing acts that occur entirely abroad fail to state a claim under the Copyright Act. *Id.*

■ The *Subafilms* court premised its holding on its finding that,

[T]he "authorization" right [contained in section 106] refers to the doctrine of contributory infringement, which requires that the authorized act *itself* could violate one of the exclusive rights listed in section 106(1)–(5), we believe that "[i]t is simply not possible to draw a principled distinction" between an act that does not violate a copyright because it is not the type of conduct proscribed by section 106, and one that does not violate section 106 because the illicit act occurs overseas....

*Id.* at 1094 (emphasis in original) (quoting *Danjaq, S.A. v. MGM/UA Communications, Co.,* 773 F.Supp. 194, 203 (C.D.Cal.1991), *aff'd on other grounds,* 979 F.2d 772 (9th Cir.1992)). The *Subafilms* Court also adopted Professor Nimmer's observation that,

Accepting the proposition that a direct infringement is a prerequisite to third party liability, the further question arises whether the direct infringement on which liabili-

ty is premised must take place within the United States. Given the undisputed axiom that United States copyright law has no extraterritorial application, it would seem to follow necessarily that a primary activity outside the boundaries of the United States, not constituting an infringement cognizable under the Copyright Act, cannot serve as the basis for holding liable under the Copyright Act one who is merely related to that activity within the United States.

*Id.* at 1093 (quoting 3 David Nimmer & Melville B. Nimmer, *Nimmer on Copyright* § 12.04[A][3][b], at 12–86). This Court agrees with the Ninth Circuit's decision in *Subafilms'* that to hold a party "liable as an infringer for violating the 'authorization' right when the party that it authorized could not be considered an infringer under the Copyright Act" would be inconsistent with the general principles of third party liability. *Id.* at 1094.

■ Based on the instruction provided by *Subafilms* and the plain language contained in the Copyright Act, the Court will proceed to analyze its subject matter jurisdiction over plaintiffs' claims. Defendant Grant is the co-author of *The Joy of Bridge* and *The Joy of Bridge Companion.* Plaintiffs allege that she has violated their exclusive right "to prepare derivative works based upon [plaintiffs'] copyrighted work" entitled *Contract Bridge. See* 17 U.S.C. § 106(2). Because United States copyright laws do not have extraterritorial operation, and because it is undisputed that Grant co-authored both books while she was residing in Toronto, Canada, this Court lacks subject matter jurisdiction over plaintiffs' claims against Grant in both Counts I and II. *See Subafilms*, 24 F.3d at 1095–98. This Court also lacks subject matter jurisdiction over the claims against defendant Rodwell since it is undisputed that at the time defendant Rodwell co-authored these two books with defendant Grant, he resided in Agincourt, Ontario, Canada.

Interestingly, defendant Grant failed to assert that this Court lacks subject matter jurisdiction over the claims against her in Count III, which is based upon the book entitled *Bridge–Introduction to Bridge Bidding "Club Series,"* especially in light of the fact that it is undisputed that this book was also written by Grant while she was residing in Toronto, Canada. *See* Affidavit of Audrey Grant ¶ III (July 26, 1995). However, it is a well-established axiom "that where jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action sua sponte." *Williams v. Rogers,* 449 F.2d 513, 518 (8th Cir.1971) (citing *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908)). *See also Smith v. Boyd,* 945 F.2d 1041, 1042–43 (8th Cir.1991) ("[a] district court has the power to sua sponte dismiss a complaint for failure to state a claim.") (citations omitted). Therefore, based on the principle that United States copyright laws do not have extraterritorial operation, the claim against Grant set forth in Count III will also be dismissed for lack of subject matter jurisdiction. *See Subafilms,* 24 F.3d at 1095–98.

■ There are claims against Prentice–Hall Canada in both Counts I and II. On March 1, 1984, defendant Prentice–Hall Canada acting as a proprietor entered into a licensing agreement with defendant Arco whereby Arco obtained the exclusive license to print, publish, and sell the book entitled *The Joy of Bridge* in the United States. Thus, according to plaintiffs, Prentice–Hall Canada "authorized" the reproduction of copyrighted work and the distribution of copies of the copyrighted work to the public. *See* 17 U.S.C. § 106(1) and (3). Defendant publisher Prentice–Hall Canada is a Canadian corporation with its principal place of business in Toronto, Ontario, Canada. Furthermore, Prentice–Hall Canada has never had a principal place of business in the United States. Because the Copyright Act does not have extraterritorial operation and the decision to authorize by Prentice–Hall Canada was made in Canada, this Court lacks subject matter jurisdiction over the claims against Prentice–Hall Canada in Count I which are based on section 106. *See Subafilms,* 24 F.3d at 1095–98. However, the Court's inquiry is not complete in light of the proposition that importation of copyrighted

material is actionable pursuant to section 602.

■ Defendant Prentice–Hall Canada contends that it "has never directly published or placed on the market in the United States either of the books [entitled *The Joy of Bridge* or *The Joy of Bridge Companion* ]." (*See* Defendants' Statement of Material Facts at ¶ 14). Plaintiffs contradict defendants' assertion with a sworn statement by Beverly Shaw, the owner and manager of the Prince and Pauper Bookshop located at 612 St. Joseph Street in Rapid City, South Dakota. The Rapid City bookstore owner asserts that the bookshop does carry *The Joy of Bridge* by Audrey Grant and that her store obtained its current inventory of the book from Prentice–Hall Canada, 1870 Birchmount Road, Scarborough, Ontario, Canada. *See* Plaintiffs' Exhibit P–2 (attached to Plaintiffs' Motion for Summary Judgment filed on Nov. 17, 1995). Plaintiffs have presented sufficient evidence to prevent summary judgment as to an alleged violation of section 602 by Prentice–Hall Canada set forth in Count I at least as far as the issue of subject matter jurisdiction is concerned.

The Court notes that plaintiffs have not presented any evidence which would establish that parent company Prentice–Hall had any control over the actions of Prentice–Hall Canada. To the contrary, defendants have established via sworn affidavit that all editorial decisions made by Prentice–Hall Canada regarding *The Joy of Bridge* were made independently of parent company Prentice–Hall and without any requirement of shareholder approval of Prentice–Hall. In fact, plaintiffs have not even named parent company Prentice–Hall as a party defendant in Count I. Therefore, parent company Prentice–Hall will not be held accountable in this instance for Prentice–Hall Canada's actions.

Count II alleges that during and after 1986, publisher Prentice–Hall Canada infringed plaintiffs' copyrighted work by publishing and distributing copies of *The Joy of Bridge Companion. See generally* 17 U.S.C. § 106(1) and (3); 17 U.S.C. § 602. Defendant Prentice–Hall Canada contends that it has never directly published or placed *The Joy of Bridge Companion* on the market in

the United States. (*See* Defendants' Statement of Material Facts at ¶ 14). Plaintiffs have failed to establish significant evidence to prevent summary judgment as to Count II's alleged violation of section 602 by Prentice–Hall Canada. *See Terry A. Lambert Plumbing,* 934 F.2d at 979. Furthermore, this Court lacks subject matter jurisdiction over claims of authorization, actual reproduction, or distribution that took place in Canada given the presumption against extraterritorial operation of the Copyright Act. *See Subafilms,* 24 F.3d at 1095–98.

■ In Count II, plaintiffs have alleged that Prentice–Hall did infringe their copyrighted work by "authorizing" the reproduction and distribution of copies of *The Joy of Bridge Companion. See generally* 17 U.S.C. § 106(1) and (3). Plaintiffs have not produced any evidence that Prentice–Hall had control over the "authorization" by Prentice–Hall Canada. Defendants, however, have presented evidence that all editorial decisions made by Prentice–Hall Canada regarding *The Joy of Bridge Companion* were made independently of parent company Prentice–Hall and without any requirement of shareholder approval of said parent company. There has simply been no evidence presented that *The Joy of Bridge Companion* was ever published in the United States. Furthermore, even if there was evidence that parent company Prentice–Hall had sufficient control or financial interests in Prentice–Hall Canada which would tie the authorization to Prentice–Hall, this Court lacks jurisdiction over an authorization within the United States of activities in Canada. *See Subafilms,* 24 F.3d at 1095–98. Therefore, this Court lacks subject matter jurisdiction over the claims against Prentice–Hall stemming from Count II of plaintiffs' complaint.

Although the Court lacks subject matter jurisdiction over the claim that Prentice–Hall Canada violated plaintiffs' exclusive right by authorizing Arco to reproduce and distribute within the United States the book entitled *The Joy of Bridge,* it is clear that subject matter jurisdiction does exist over the claim that Arco has violated the Copyright Act by reproducing and distributing copies of the book within the United States. *See* 17

U.S.C. § 106(1) and (3). Taking the analysis one step further, Prentice–Hall is the parent company of Arco. However, plaintiffs have not produced any evidence that Prentice–Hall had control over Arco's decisions or actions. To the contrary, it is undisputed that all licensing and publishing decisions made by Arco relating to *The Joy of Bridge* were made independent of parent company Prentice–Hall and without any requirement of shareholder approval of said parent company. In fact, plaintiffs have not even named parent company Prentice–Hall as a party defendant in Count I. Therefore, parent company Prentice–Hall will not be held accountable in this instance for Arco's actions.

In conclusion, this Court has subject matter jurisdiction over the Count I claims against Prentice–Hall Canada and Arco; however, the Court lacks jurisdiction over those claims against Grant and Rodwell contained in Count I. Furthermore, this Court lacks subject matter jurisdiction over all claims against all defendants set forth in Count II. Finally, this Court lacks subject matter jurisdiction over the claims asserted against Grant found in Count III of plaintiffs' complaint.

## B. PERSONAL JURISDICTION

Defendants Prentice–Hall Canada and Grant assert that this Court lacks personal jurisdiction over them because Grant is a Canadian resident and Prentice–Hall Canada is a Canadian corporation, neither have a place of business, agent, or representative in South Dakota, they have no minimum contacts with South Dakota regarding the alleged infringement, and they are not otherwise found in South Dakota. The determination that this Court lacks subject matter jurisdiction over all claims asserted against Grant is dispositive of the claims against her; therefore, the Court need not concern itself with the issue of personal jurisdiction as it pertains to that defendant.

■ As was the case with subject matter jurisdiction, the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that personal jurisdiction exists. *Northrup King v. Compania Pro-*

*ductora Semillas,* 51 F.3d 1383, 1387 (8th Cir.1995). Since South Dakota applies its long-arm statute, S.D.C.L. § 15–7–2(14), to the fullest extent permissible under due process, this Court's inquiry will concern itself with "whether exercise of personal jurisdiction comports with due process." *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 921 (8th Cir.1995) (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 820 (8th Cir.1994)). It is well established that "[d]ue process requires both minimum contacts with the forum state and accord with the notions of 'fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)) (internal quotations and citations omitted). "[T]he constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum State." *Id.* at 922 (quoting *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183).

■ In evaluating whether or not jurisdiction is proper, the Court must consider the following five factors:

(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. The most important factors are those which analyze forum contacts.

*Bell Paper Box,* 53 F.3d at 922 (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390 (8th Cir.1991)). For this Court to maintain personal jurisdiction, Prentice–Hall Canada's "contacts with South Dakota must be more than 'random,' fortuitous,' or 'attenuated.'" *Bell Paper Box,* 53 F.3d at 922 (quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). Prentice–Hall Canada "must have purposefully availed itself of 'the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Bell Paper Box,* 53 F.3d at 922 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

There is no evidence that the defendant employed anyone in South Dakota; nor is there evidence that Prentice–Hall Canada sent a representative to South Dakota prior to this suit. *See Bell Paper Box,* 53 F.3d at 922. The only contacts which plaintiffs have presented are those relating to a book inventory combined with a single credit application by one store in South Dakota. This is simply not sufficient to invoke personal jurisdiction over a foreign defendant. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (acknowledging the significance of the burden placed upon a foreign defendant forced to defend itself in a foreign legal system). It is true that "minimum contacts 'need not include physical presence at all,' contacts must be more than 'attenuated' to support jurisdiction." *Bell Paper Box,* 53 F.3d at 922 n. 2 (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 820 (8th Cir.1994)). Furthermore, "merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Bell Paper Box,* 53 F.3d at 922 (quoting *Iowa Elec. Light & Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1303 (8th Cir. 1979)).

In conclusion, although this Court does have subject matter jurisdiction over the claims against Prentice–Hall Canada contained in Count I, plaintiffs have failed to present sufficient evidence to prevent summary judgment based on lack of personal jurisdiction over defendant Prentice–Hall Canada. *See Terry A. Lambert Plumbing,* 934 F.2d at 979.[1]

## C. STATUTE OF LIMITATIONS

Defendant Arco contends that plaintiffs' claims against it are barred by the applicable statute of limitations contained in the Copyright Act. The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Plaintiffs assert that Arco's actions have led to subsequent and continuing acts of infringement by the other defendants, and therefore the statute of limitations has not run. (*See* Plaintiffs' Affidavit in Opposition to Summary Judgment at ¶ 24 (Nov. 17, 1995)).

In *Makedwde Pub. Co. v. Johnson,* 37 F.3d 180 (5th Cir.1994), the Fifth Circuit Court of Appeals rejected the application of this same theory. *Id.* at 181. The *Makedwde* court relied on the Ninth, Sixth, and Second Circuits' interpretations of section 507(b) to conclude that a defendant "is only liable for *his acts of infringement* committed within three years prior to Plaintiffs' lawsuit." *Id.* (emphasis added) (citing *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481–82 (discussing the "prevailing view that the statute bars recovery on any claim for damages that accrued more than three years before commencement of suit."); *Hoste v. Radio Corp. of America,* 654 F.2d 11, 11 (6th Cir.1981) (holding that the three-year statute of limitations of the Copyright Act barred recovery of any claims based on damages accruing more than three years before the complaint was filed); *Stone v. Williams,* 970 F.2d 1043, 1049–50 (2d Cir.1992) (determining that recovery "is allowed only for those acts occurring within three years of suit and disallowed for earlier infringing acts.")).

On March 1, 1984, defendant Prentice–Hall Canada acting as a proprietor entered into a licensing agreement with defendant Arco whereby Arco obtained the exclusive license to print, publish, and sell the book entitled *The Joy of Bridge* in the United States. The license agreement was terminated on May 10, 1991, whereby all rights of Arco under the agreement reverted to Prentice–Hall Canada. Arco has not published any editions of *The Joy of Bridge* since the termination of

---

1. Defendants Grant and Prentice–Hall Canada contend that they lack the requisite minimum contacts with the forum; thus, Counts I and II are improperly venued in South Dakota as to either of these defendants. Based upon the fact that the following determinations are dispositive of the claims against these two defendants, this Court need not address the issue of venue: (1) the Court lacks subject matter jurisdiction over all of the claims against Grant; (2) the Court lacks subject matter jurisdiction over the claims set forth in Count II against Prentice–Hall Canada; and (3) the Court lacks personal jurisdiction over Prentice–Hall Canada.

said license. Following the plain language of the Copyright Act, plaintiffs' infringement claim against Arco is deemed to have accrued on the date of Arco's last act of infringement—May 10, 1991. *See Makedwde Pub.*, 37 F.3d at 180. Plaintiffs did not commence this litigation until March 21, 1995. Therefore, the statute of limitations set forth in section 507 has run, and plaintiffs' claim against Arco contained in Count I is barred.

## D. MERITS

The only allegations which have not been dismissed are those set forth in Count III against defendants ACBL, Howard, and Green.[2] Although the Court's previous analysis has disposed of the claims contained in Counts I and II, the Court will continue its analysis to demonstrate that all of plaintiffs' allegations set forth in Counts I–III are without merit. Defendants assert that authors Grant and Rodwell did not have access to the plaintiffs' pamphlet entitled *Contract Bridge*, and furthermore, even if there was access, there is no substantial similarity between the plaintiffs' pamphlet and the alleged infringing works.

In order for plaintiffs to ultimately prevail on the merits of their claim, they must first prove that they own a copyright, and second, that defendants copied their work. *Moore v. Columbia Pictures Industries, Inc.*, 972 F.2d 939, 941 (8th Cir.1992) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1295, 113 L.Ed.2d 358 (1991)). Defendants have not set forth any evidence which would prove that the certificate of registration, No. TXU 44–538, is in any manner defective. Therefore, plaintiffs' first element concerning copyright ownership has been established for purposes of this discussion.

Plaintiffs may establish the second element by means of direct proof or "by demonstration of access (by the alleged infringer) and substantial similarity (between the works at issue)." *Moore*, 972 F.2d at 941–42. *See also Pellegrino v. American Greetings Corp.*, 592 F.Supp. 459, 461 (D.S.D.

1984) (J. Bogue) ((recognizing that "courts have established a presumption of copying based upon proof that the Defendant had access to the Plaintiff's work and that the two works are substantially similar.") (quoting N. Boorstyn, *Copyright Law*, §§ 10:12; *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977))). As is typically the case, the record in this matter does not contain any direct proof of copying. *Moore*, 972 F.2d at 941. Therefore, the inquiry must turn to access and substantial similarity.

Access may be established by showing that defendant authors had an "opportunity to view or to copy" plaintiffs' work. *Id.* at 942 (quoting *Sid & Marty Krofft Television*, 562 F.2d at 1172; 3 *Nimmer on Copyright* § 13.02[A] ). However, plaintiffs must establish more than a mere "bare possibility" of access. There must be a showing that defendants had a "reasonable possibility" of viewing the copyrighted work. *Moore*, 972 F.2d at 942 (citing *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978); 3 *Nimmer on Copyright* § 13.02[A] ). Both authors Grant and Rodwell have denied seeing plaintiffs' work entitled *Contract Bridge* prior to the filing of this lawsuit. Plaintiffs contend that defendants had access to their pamphlet because it was displayed and promoted at ACBL sanctioned bridge tournaments which both Grant and Rodwell regularly attended. (*See* Plaintiffs' Motion for Summary Judgment at ¶ 50). Plaintiffs have also placed in the record a copy of a portion of the ACBL's April 1982 issue of *The Bulletin* which discusses plaintiffs' work. (*See* Plaintiffs' Exhibit P–8 (attached to Plaintiffs' Motion for Summary Judgment filed on Nov. 17, 1995)). Approximately 200,000 members of the ACBL receive copies of *The Bulletin*. Although clearly not dispositive of the issue, another fact to be considered is that plaintiffs received their certificate of registration for their work entitled *Contract Bridge* in May of 1980 and that all of the alleged infringing works were published and placed on the market several

---

**2.** Defendant Howard was employed as the CEO of ACBL from approximately April 6, 1992, through November 25, 1992. Defendant Green is the current CEO of ACBL.

years later.[3] Based on this evidence, the Court finds that defendant authors had an "opportunity to view or to copy" plaintiffs' work. *Moore,* 972 F.2d at 942. Therefore, this Court believes that plaintiffs have presented evidence to defeat defendants' motion for summary judgment on the basis of access. *See Terry A. Lambert Plumbing,* 934 F.2d at 979.

Plaintiffs must also establish a substantial similarity between their work and the alleged infringing works. *Moore,* 972 F.2d at 945. According to the Eighth Circuit Court of Appeals,

> Determination of substantial similarity involves a two-step analysis. There must be substantial similarity "not only of the general ideas but of the expressions of those ideas as well." First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression.

*Id.* (internal citations omitted) (citing *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 120 (8th Cir.1987)). *See also Pellegrino,* 592 F.Supp. at 462 (discussing the substantial similarity analysis). The Eighth Circuit has further instructed the district courts to "first determine whether the details of the works contain objective similarities, and if they do, then [to] examine the works to ascertain if they are so dissimilar that ordinary, 'reasonable minds [can] not differ as to the absence of substantial similarity in expression.' " *Moore,* 972 F.2d at 945 (quoting *Hartman,* 833 F.2d at 120).

■■■ The principle of similarity of expression is founded upon the "axiom of copyright law that copyright protects only an author's expression of an idea and not the idea itself." *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir.1984) (citing 17 U.S.C. § 102(b)). Accordingly, the "degree of substantial similarity required to show infringement varies according to the type of work and the ideas

expressed in it." *Id.* Plaintiffs' work, as well as the alleged infringing works, are factual works which attempt to educate their audience about the game of bridge. Courts have experienced great difficulty in discerning whether authors expressing ideas contained in a factual work with an often limited range of expression available have engaged in an activity which constitutes infringement under the Copyright Act. *Id.* at 488–89. Several courts have determined that a second author's work does not infringe even if the first author's expression is reproduced verbatim when the doctrine of *scenes a faire* is applied. *Id.* at 489; *Hartman,* 833 F.2d at 121 (holding that apparent similarities in two works were "either noncopyrightable ideas, *scenes a faire,* or of an insubstantial nature."). *See also Control Data Sys., Inc. v. Infoware, Inc.,* 903 F.Supp. 1316, 1323 (D.Minn.1995) (discussing the *scenes a faire* doctrine). Under the doctrine of *scenes a faire,* there is no infringement if an expression constitutes "stock scenes or scenes that flow[ ] necessarily from common unprotectable ideas[.]" *Landsberg,* 736 F.2d at 489 (quoting *See v. Durang,* 711 F.2d 141, 143 (9th Cir.1983)).

■■■ Plaintiffs have alleged the following specific similarities: (1) description and illustration of that aspect of the game of bridge referred to as the "auction" with such headings as "responder" or "opener"; (2) use of similar heading classifications; (3) establishing the bidding priority; and (4) adoption or incorporation of plaintiffs' algorithm instituted by plaintiffs' DIAL–A–BID. As to plaintiffs' first allegation, the term "auction" describes "the period of the game in which the two partnerships vie (by means of bids) for the right to play the hand just dealt on terms most favorable to themselves." *See Contract Bridge* at 36. *See also The Joy of Bridge* at 296 (defining the auction to be "[t]he process of determining the contract through a series of bids"); *Bridge–Introduction to Bridge Bidding "Club Series"* at 210 (defining the auction as "[a] series of bids that determines the final contract."). Plaintiffs have used and defined the term "opener" to describe

---

**3.** *The Joy of Bridge* was completed in 1984; *The Joy of Bridge Companion* was completed in 1986; and *Bridge–Introduction to Bridge Bidding "Club Series"* was completed in 1987.

"the first member of the partnership to bid." *See Contract Bridge* at 38. In *The Joy of Bridge,* authors Grant and Rodwell use the same term "opener" which they define as "[t]he player who makes the first bid in an auction." *The Joy of Bridge* at 299. Grant's work entitled *Bridge–Introduction to Bridge Bidding "Club Series"* employs the term "opening bidder" to describe the initial bidder. *Bridge–Introduction to Bridge Bidding "Club Series"* at 213. Furthermore, plaintiffs and defendants in the above entitled works all utilize the term "responder" to characterize the partner of the opening bidder. *See Contract Bridge* at 38; *The Joy of Bridge* at 300; *Bridge–Introduction to Bridge Bidding "Club Series"* at 214.

The apparent similarities that exist in the works at issue as a result of the use of the term "opener" and "responder" is simply a product of the limited range of expression available. The same is true for plaintiffs' second allegation relating to the use of similar heading classifications. Plaintiffs' work classifies a total point count to be either poor, minimum, fair, good, or excellent. The alleged infringing works have five similar categories of weak, minimum, medium, maximum, and strong. These apparent similarities that exist in the alleged infringing works are "either noncopyrightable ideas, *scenes a faire,* or of an insubstantial nature." *Hartman,* 833 F.2d at 121. Therefore, plaintiffs' first and second allegations of similarity do not support a claim of copyright infringement.

Plaintiffs' third and fourth allegations of similarity in establishing the bidding priority and the algorithm employed by plaintiffs' DIAL–A–BID focus on the game's strategy. The Court has reviewed the different suggestions pertaining to the bidding priority found in *Contract Bridge* at page 24, *The Joy of Bridge* at page 92, *Bridge–Introduction to Bridge Bidding "Club Series"* at page 86 and the alleged adoption of plaintiffs' algorithm found in *The Joy of Bridge* at pages 21, 77, and 92, and *Bridge–Introduction to Bridge Bidding "Club Series"* at pages 25, 74, 106, and 136. The Court is not persuaded that the strategies are substantially similar in expression as to warrant a claim of infringe-

ment. To be sure, any similarity that does exist is inherent to the game of bridge and is thus necessary and unavoidable. *See generally Landsberg,* 736 F.2d at 489 (holding that a strategy book on the game of Scrabble did not infringe copyright of games' author); *Chamberlin v. Uris Sales Corp.,* 150 F.2d 512 (2d Cir.1945) (determining that a defendant's publication and sale of parts and rules for the game "Acy–Ducy" did not infringe game owner's exclusive rights). It is clear that any apparent similarities in game strategy are "either noncopyrightable ideas, *scenes a faire,* or of an insubstantial nature." *Hartman,* 833 F.2d at 121. Copyright protection for an original work of authorship simply does not extend "to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

Based on the foregoing, plaintiffs have failed to establish evidence to withstand defendants' motion for summary judgment on the basis of substantial similarity and similarity of expression. *See Terry A. Lambert Plumbing,* 934 F.2d at 979. Therefore, summary judgment is appropriate against plaintiffs on all of the claims set forth in plaintiffs' complaint.

### E. UNFAIR COMPETITION

Plaintiffs have alleged unfair trade practice and unfair competition in paragraphs 11, 18, and 25 of their complaint. Since those allegations are based upon copyright infringement, and this Court has determined that defendants have not infringed on plaintiffs' copyright, all claims of unfair trade practice and unfair competition must also fail. *Pellegrino,* 592 F.Supp. at 462. *See also M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1494 (11th Cir.1990).

### CONCLUSION

This Court lacks subject matter jurisdiction over all claims in Counts I and II except for the claims against Prentice–Hall Canada and Arco set forth in Count I of plaintiffs' complaint. The Court further finds that it lacks subject matter jurisdiction

over the claim against Grant contained in Count III. Although this Court has determined that it does have subject matter jurisdiction over the claims against Prentice–Hall Canada contained in Count I, it lacks personal jurisdiction over Prentice–Hall Canada. Furthermore, plaintiffs' claim against Arco set forth in Count I is barred by the statute of limitations found at 17 U.S.C. § 507(b). The Court also finds that plaintiffs have failed to present evidence which would allow their claims to withstand defendants' motion for summary judgment based on the merits of the case. Because this Court has determined that defendants have not infringed on plaintiffs' copyright, all claims of unfair trade practice and unfair competition must also fail. Finally, this Court will not award defendants' attorney fees pursuant to 17 U.S.C. § 505 since plaintiffs have not acted in bad faith and their complaint was colorable. *Hartman*, 833 F.2d at 123. Accordingly, this Court finds that there is no genuine issue as to any material fact and that all defendants are entitled to judgment as a matter of law. A judgment shall be issued forthwith.